UNITED STATES, Appellee

v.

HOWARD V. BARNABY, Private E-1,
U. S. Army, Appellant

5 USCMA 63, 17 CMR 63

No. 4752

Decided October 15, 1954

LT COL George M. Thorpe, U. S. Army, and 1ST LT Jackson L. Kiser, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Benjamin C. Flannagan, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

On October 22, 1953, the accused was tried for wrongful use of a narcotic drug, namely, morphine, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. He was found guilty and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for three years. The convening authority approved the findings and sentence, after reducing the period of confinement to two years, and the board of review affirmed. Subsequently, The Judge Advocate General of the Army remitted the unexecuted portion of the sentence. We granted accused's petition for review in order to determine two issues. The first involves the question of whether the ac-

cused's right against self-incrimination was violated in obtaining a urine specimen for analysis, and the second is whether the evidence is sufficient to show the presence of morphine.

The record shows that on July 29, 1953, the accused was arrested by a Criminal Investigation Division agent and taken to the Army hospital at Camp Sendai, Japan, for examination. During the course of the examination he was ordered by a noncommissioned officer to give a urine specimen, which he did without objection. The chain of custody of the specimen was established by competent evidence. Subsequently, it was analyzed by an expert, and his stipulated testimony showed that color reaction tests known as the Marquis, Frohde, and Fecke tests revealed the presence of morphine alkaloids in the urine sample.

At the time the stipulation was offered in evidence defense counsel interposed an objection to its admission on the ground that the urine sample had been obtained from the accused involuntarily and that he was required to incriminate himself. After testimony concerning the circumstances surrounding the procurement of the specimen had been received, trial counsel conceded that the accused furnished the sample because of the order of the noncommissioned officer. The law officer concluded that this did not constitute a violation of accused's right against self-incrimination. He stated the reason for his ruling in the following language:

"At this time the law officer will rule that in his opinion the taking of the urine specimen from the accused, Private Barnaby, was no different in his opinion than the taking of a blood sample, which has long been recognized as a permissible act. Therefore, the objection of the defense will be denied."

Pursuant to this ruling, the stipulation was received in evidence. That ruling is now asserted to be erroneous.

In the recent case of United States v. Williamson, 4 USCMA 320, 15 CMR 320, we discussed the contention that involuntarily furnishing samples of urine was not a violation of Article 31 of the Uniform Code of Military Justice, 50 USC § 602. That holding is dispositive of the issue in this case. While that decision was by a divided Court, the issue was presented under different circumstances. There the sample was obtained by catheterization and the Chief Judge based his dissent primarily on the violation of the right of privacy of the human body. No such issue is presented here as there was no touching of the body of the accused. A verbal order was the only means used to obtain the samples.

As pointed out in United States v. Williamson, supra, we have on three previous occasions protected an accused from furnishing evidence against himself. United States v. Rosato, 3 USCMA 143, 11 CMR 143; United States v. Eggers, 3 USCMA 191, 11 CMR 191; and United States v. Greer, 3 USCMA 576, 13 CMR 132. However, in that case we sought to establish our reasons for concluding that being required to produce fluids fell without the protection of Article 31. The principal opinion quoted with approval the interpretation by the Council of the American Law Institute that a person does not have the privilege to refuse to furnish a sample of body fluid for analysis and Judge Brosman in his concurring opinion stated:

". . . Accordingly, I am sure that—unlike the rule in the situations involving handwriting and voice exemplars—a person suspected on reasonable grounds may lawfully be required by an order from superior authority to furnish urine samples for chemical analysis. Obviously, under my view, Article 31 does not apply to demand any sort of warning to the accused, since he could be directed to furnish a sample were he initially to decline to do so, and since such a sample can scarcely be considered a 'statement'—for the latter term refers solely to testimonial utterances."

Accordingly, and in line with our previous decisions, we hold that the accused's privilege against self-incrimination was not violated in the present case, and that the evidence of the

analysis of the urine specimen was admissible and properly received.

The second issue upon which accused's petition for review was granted can be disposed of without difficulty. It is contended that the tests relied upon by the prosecution to establish the presence of morphine in the urine sample were so unreliable scientifically as to render them valueless. We have recently held to the contrary in United States v. Ford, 4 USCMA 611, 16 CMR 185, and our holding in that case is controlling in the present instance. Here, the accused offered no evidence in his own behalf, and the testimony of the qualified expert as to the presence of morphine in the urine sample stands undisputed. Moreover, this evidence entered the record by means of a stipulation between prosecution and defense and no objection on the grounds now complained of was made at the trial level. The accused produced no evidence tending to explain the presence of the morphine under circumstances which would render him innocent of the charge. Accordingly, the second issue must be resolved in favor of the Government.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):
I dissent.

In the instant case, the Government concedes that the specimen in question was obtained solely as a result of the order of a noncommissioned officer requiring the accused to submit it. The accused was required to obey that order or face the sanctions applicable to Article 91, 50 USC § 685, in the Far East. Yet, the only purpose of issuing the order was to procure evidence to be used against him in a criminal proceeding. Our problem, therefore, is to determine whether an accused or suspected person may be lawfully ordered to produce a urine specimen.

Prior decisions of this Court hold that such a means of obtaining evidence is illegal, and its results inadmissible in evidence.

In United States v. Rosato, 3 USCMA 143, 11 CMR 143, we were concerned with the legality of an order to an accused to print the alphabet for the purpose of assisting investigators in establishing his identity as the author of a questioned document. A unanimous court held that order invalid, declaring:

". . . Article 31, supra, permit[s] an accused to remain absolutely silent regarding an offense of which he . . . [is] accused or suspected. It follows, therefore, that he may not be compelled, by military orders carrying the awesome sanctions of the 90th Article, supra, or otherwise to furnish a *necessary evidential fact.*" [Emphasis supplied.]

Upon similar grounds in United States v. Eggers, 3 USCMA 191, 11 CMR 191, we held that handwriting specimens supplied as a result of a protested military order are inadmissible in evidence.

In those decisions we distinguished cases holding that it is not a violation of the prohibition against compulsory self-incrimination to require an accused to: submit to fingerprinting, place his foot in a track, submit to an examination of his person for scars, be forcibly shaved and have his hair trimmed, grow a beard, or try on a garment to determine its fit. We, there, pointed out that such instances do not involve an affirmatively conscious act on the part of the individual affected by the demand. A further distinguishing element is the fact that should the individual refuse to comply with the order, reasonable force only would be required to accomplish the objective. The concurring opinion of Judge Brosman and my dissenting opinion in United States v. Williamson, 4 USCMA 320, 15 CMR 320, show that a majority of this Court would proscribe *compulsory* catheterization.

Because the order here actually compelled the accused to furnish evidence against himself, it violated the Fifth Amendment to the Constitution of the United States and Article 31, 50 USC

§ 602. All evidence flowing from this source was consequently inadmissible.

I would reverse the conviction and dismiss the charge.