UNITED STATES, Appellee

v

BROCK G. McCLUNG, Private First Class, U. S. Army, Appellant

11 USCMA 754, 29 CMR 570

No. 13,941

Decided August 5, 1960

 

*First Lieutenant Ralph T. Smith* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ralph Herrod.*

*First Lieutenant Richard E. Wiley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Major John G. Lovrien,* and *First Lieutenant Avram G. Hammer.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was found guilty of wrongful possession of heroin, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, and wrongful use of a narcotic drug, in violation of the same Article. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for six months, and reduction to the lowest enlisted grade. Intermediate appellate authorities affirmed, and we granted review on the issues whether the accused was prejudiced by the receipt in evidence of the results of chemical tests performed upon blood and urine samples obtained from him.

Fellow soldiers discovered McClung lying unconscious in his barracks' latrine on September 3, 1959. An eye dropper was clasped in one hand, and a hypodermic needle was discovered either in the other hand or on a nearby shelf. An ambulance was immediately summoned, and McClung was carried, still unconscious, to the station hospital.

Immediately after his arrival in the hospital emergency room, the accused was subjected to a physical examination, and blood samples were taken from his body. Captain Schragger, the examining medical officer, concluded that the accused was undergoing a reaction to the use of narcotic drugs and directed that criminal investigators be notified. By application of physical stimuli, Schragger finally succeeded in returning the accused to a conscious state. Thereafter, and in the presence of a Criminal Investigation Detachment agent, Schragger asked McClung, "if he could give us a urine specimen so that we could examine it and he said he would." Accused was nevertheless unable to furnish the specimen until "we gave him eight or ten glasses of water." He then passed the desired sample which was immediately turned over to the investigator. During the entire proceedings, accused's condition remained such that he continued to lapse into unconsciousness and could be aroused only by talking to him.

Subsequent analysis of the urine and blood specimens disclosed the presence of a morphine derivative in accused's body. Testimony concerning the results of the analyses were received on behalf of the prosecution over defense objection that the samples had been improperly obtained.

Appellate counsel have principally di-

rected their briefs and arguments before us to the question ■■■■■■ whether accused should ■■■■■■ have been advised of his rights under Code, supra, Article 31, 10 USC § 831, before being asked to provide law enforcement personnel with a urine sample. We need not now decide that question, for it is crystal clear that Article 31 requires specimens at least to be voluntarily furnished. Concurring opinion of Chief Judge Quinn, United States v Booker, 4 USCMA 335, 337, 15 CMR 335, 337; United States v Jordan, 7 USCMA 452, 22 CMR 242; United States v Forslund, 10 USMA 8, 27 CMR 82. As was said in United States v Jordan, supra, and reiterated in the *Forslund* case, one may not be compelled against his will to produce his urine for the purpose of using it, or an analysis of it, as evidence against him in a trial by court-martial without violating Code, supra, Article 31. That holding and, indeed, Article 31 itself, is rendered meaningless if urine sample may properly be obtained by "request" from one whose physical state is such that he is unable properly to evaluate the desires of a commissioned officer and to make a knowing election concerning the "asking" for the sample. In short, a semiconscious accused is in no condition voluntarily to respond to an inquiry whether he is willing to furnish evidence against himself. See United States v Hernandez, 4 USCMA 465, 16 CMR 39; United States v Dison, 8 USCMA 616, 25 CMR 120; and concurring opinion of Chief Judge Quinn, United States v Wynn, 11 USCMA 195, 29 CMR 11. The record here depicts precisely that situation, for Captain Schragger testified that accused continued to lose consciousness even after he had furnished the urine sample. Under the circumstances, we hardly think it likely that McClung possessed the ability to understand the "request" of his superior and voluntarily to consent to furnish the specimen. Accordingly, we must conclude that it was prejudicially erroneous to receive the results of the analysis of his urine in evidence.

As reversal of the specification of wrongful use of narcotics is required by our holding with respect to the urinalysis, we need not reach the issue relative to the blood samples obtained from the accused. That also furnished evidence only respecting the use of a morphine derivative. Neither question affects accused's conviction of the entirely separate specification of wrongful possession of heroin. Thus, findings of guilty with respect to that count may stand.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Army. The board may reassess the sentence on the basis of the remaining findings of guilty or direct a rehearing on the specification of wrongful use of narcotics and the penalty.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

As my associates note, no infirmity attaches to accused's conviction for wrongful possession of narcotics, and accordingly I join them in affirming that finding of guilty. However, I must take exception to their holding that the finding of guilty of unlawful use of a habit-forming drug must be set aside. A short statement of the facts will be of assistance in presenting my views.

When accused was found lying unconscious on his barracks floor, he was removed to the hospital. He was still unconscious and the attending doctor therefore, in accordance with standard procedure, immediately and prior to any examination drew the blood samples in question for the purpose of diagnosis and treatment. Thereafter, the physician aroused accused by squeezing his ankle and slapping his face. He was then able to converse with accused and the latter answered his questions. He proceeded to examine accused and concluded he was under the influence of a narcotic drug. Thereupon the doctor contacted criminal investigation authorities. Thereafter, and in the presence of a Criminal Investigations Detachment agent, accused voided a urine

specimen for the doctor. Although no warning was given to accused before he was asked if he would provide a sample, the evidence of record shows that he agreed to do so. Prior to that time he was ambulatory, and, in response to a request that he disrobe in order that his clothing might be examined, consented, stating that he had nothing to hide. Also, according to the doctor:

"He appeared at this time to be rational to me and he had been talking to me and giving me part of his life history and answered other questions as I had asked him, and appeared to be alert, cooperative and in possession of his faculties.

"Q And were his answers responsive to the questions you asked him?
"A Yes they were. He was oriented in time and place."

As the base opinion points out, appellate counsel have directed considerable attention to whether a suspect must be warned in accordance with Article 31, Uniform Code of Military Justice, 10 USC § 831, before being asked to provide a urine specimen. Nevertheless, that question remains unresolved, for the majority hold accused's "semiconscious" state as a matter of law prevented his understanding of the request and hence precluded his voluntary consent. That conclusion flies in the face of the evidence of record. From the facts previously recounted, together with others such as drinking several glasses of water to aid his bodily functions and complying with a number of requests, it is obvious there was credible evidence from which the law officer could determine that the accused was sufficiently in possession of his faculties fully to know and understand all that transpired and intelligently to consent to the doctor's request for a urine sample. And it is axiomatic that we are here concerned merely with the interlocutory question of the admissibility of the evidence. In that connection it is interesting to note that the law officer did not submit the question of admissibility to the court members, and my brothers do not contend he should have done so. Thus, it is

only in the absence of an evidentiary basis to support the law officer's ruling that we may properly upset it, and since it is crystal clear we are not faced with that situation, I conclude he did not abuse his discretion. Moreover, the holding of the Court is entirely contrary to the theory of the defense. The thrust of their argument is that the accused was not warned of his rights under Article 31 of the Code. That contention presupposes he was in possession of his faculties and had he been warned he would have understood his rights and not volunteered the sample. The argument that accused was unable to understand the doctor's request is not urged by the defense and is raised for the first time at this level.

Because of the conclusion I reach on the first issue, it is necessary to explore its other ramifications. The concepts I would prefer to employ in this area have been discarded in large part by my associates. Accordingly, believing the law fixed by the views of the majority, I concurred with their result in United States v Forslund, 10 USCMA 8, 27 CMR 82. Here, however, unlike that case and also unlike United States v Jordan, 7 USCMA 452, 22 CMR 242, we do not have an order to provide a specimen. Neither are we concerned with the problem that confronted us in the catheter cases, nor with any form of compulsion, coercion, or unlawful influence or inducement. Consequently, Article 31(a) of the Code, supra, is not involved. Rather, the question is, as counsel argue, whether the absence of a warning renders the evidence inadmissible. The short answer to that inquiry may be found in the Chief Judge's concurring opinion in United States v Booker, 4 USCMA 335, 15 CMR 335, which is cited by the majority in support of their position in the case at bar. There, at page 338, he stated:

"For reasons set out in my dissenting opinion in Williamson, 4 USCMA 320, 15 CMR 320, I do not agree with the majority in its sanction of the use of a catheter without the accused's consent. However, in this case, the accused voluntarily cooperated with the authorities. Under the circumstances, he has no cause to complain.

**757**

Article 31 of the Code does not apply because the urine specimen was obtained with his consent, and since there was no interrogation of any kind, there was no need to warn the accused that any statement made could be used against him in a trial by court-martial."

Obviously, a warning that an accused need not furnish a sample would provide strong support for a finding of consent, but, as in the case of a lawful search, no such warning is required. See United States v Insani, 10 USCMA 519, 28 CMR 85; United States v Cuthbert, 11 USCMA 272, 29 CMR 88.

For the above-stated reasons, I would hold the urinalysis evidence was properly admitted. That leaves for resolution the issue relative to the incriminating blood samples, and despite the fact that the question may arise again in the event of a rehearing, the Court furnishes no answer. For my own part, I believe it is clear beyond cavil that the result of that chemical analysis was also properly allowed in evidence. True it is that accused was unconscious at the time the blood was extracted from his vein, but the method used was a routine procedure commonplace in everyday life and in conformance with proper medical standards. There is nothing about such a blood test that is offensive even by the most delicate standard, nor does it shock the conscience or sense of justice. Breithaupt v Abram, 352 US 432, 1 L ed 2d 448, 77 S Ct 408 (1957); cf. Rochin v California, 342 US 165, 96 L ed 183, 72 S Ct 205 (1952). Thus, it cannot be maintained there was any undue or improper invasion of accused's person or rights. Moreover, in this instance the sample was drawn from him purely for the purpose of diagnosis and treatment of a man obviously in need of medical examination and care. Under those circumstances, it is clear that extracting blood from accused while he was unconscious cannot be said to have compelled him to incriminate himself in violation of Article 31 of the Code, supra. United States v Baker, 11 USCMA 313, 29 CMR 129.

Finally, if there was no violation of Article 31 in obtaining the urine sample—and my brothers do not find any—and in the absence of any holding of error on the blood tests, I wonder what consideration has been given to the compelling evidence rule. See United States v Ledlow, 11 USCMA 659, 29 CMR 475. Certainly on this record that principle should be dispositive.

For the above-stated reasons, I would affirm the decision of the board of review.