UNITED STATES, Appellee

v

TIMOTHY L. MALUMPHY, Airman Basic,
U. S. Air Force, Appellant

13 USCMA 60, 32 CMR 60

No. 15,094

April 27, 1962

*Colonel Joseph E. Krysakowski* and *Major William A. Crawford, Jr.,* were on the brief for Appellant, Accused.

*Colonel Merlin W. Baker, Lieutenant Colonel Simpson M. Woolf,* and *Captain Donald W. Brewer* were on the brief for Appellee, United States.

## Memorandum Opinion of the Court

KILDAY, Judge:

After our decision in United States v Malumphy, 12 USCMA 639, 31 CMR 225, affirming his conviction for aggravated assault, but before promulgation of our mandate, accused filed a timely petition for new trial pursuant to the provisions of Article 73, Uniform Code of Military Justice, 10 USC § 873. Said petition was initially grounded upon accused's allegation that trial counsel had entered into an attorney-client relationship with him with respect to the offenses he later prosecuted as trial counsel, the impropriety of which action accused did not realize. In answer to the petition, the Government filed affidavits executed by trial counsel and by his superior, the chief of the military justice division in the office of the staff judge advocate of the command involved, who assigned trial counsel the duty of prosecuting the case.

The sworn averments of the last-mentioned two men conclusively demonstrate accused is not entitled to the relief sought on the ground first submitted. However, in the course of the statement by the chief of military justice, the affiant volunteered certain information upon which the defense now endeavors to base a second argument supporting the requested relief. This new contention—asserted in a brief in support of the petition for new trial—finds its roots in the statement that, upon assigning trial counsel to the case almost immediately after the offenses were committed, the chief of military justice apprised him "we were sending . . . [accused] to the hospital for a psychiatric examination to determine his mental responsibility."

Notwithstanding the apparent truth of those facts, no cloud is cast, by the affidavits and pleadings ▮ presently before this Court, on the conclusion reached in our opinion, supra. The experts appearing for the Government in rebuttal testified only as to their evaluations of accused and not to any statements made by him. And regardless of any action taken by the chief of military justice or trial counsel's knowledge thereof, it is clear beyond peradventure that from the standpoint of the psychiatrists accused was not a suspect. Absent here, too, is any indication the doctors were made unwitting tools of anyone responsible for administering military justice who was bent on circumventng accused's rights against self-incrimination. Cf. United States v Nitschke, 12 USCMA 489, 31 CMR 75. He was, so far as the psychiatrists knew or were concerned, admitted to the hospital for medical reasons only, and the evidence ineluctably leads to the conclusion that they interviewed him for the last-mentioned purpose. Their inquiries were not in anywise a criminal investigation, and they were not concerned with determining his mental capacity and responsibility for his offenses. Under the circumstances of the case at bar, their evaluations of

accused were not improperly allowed into evidence.

One other matter bears mention. It has been suggested that further inquiry might disclose the existence of a deliberate suppression of evidence in the case at bar. See Alcorta v Texas, 355 US 28, 2 L ed 2d 9, 78 S Ct 103 (1957). It may be noted, parenthetically, that the statement was voluntarily furnished and not ferreted out by the defense. But quite apart from that fact and, more important, although the affidavit indicates his superior told trial counsel accused was to be sent for determination of his responsibility, there is totally absent that nexus between those men and the psychiatrists as would cause the formers' actions to affect the admissibility of the questioned evidence. Thus, the information now brought to our attention does not constitute a material matter that would affect the merits, and the present situation is to be distinguished from *Alcorta* and allied cases.

Accordingly, accused's petition for a new trial is denied.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent to the denial of the accused's petition for a new trial at this stage of the proceedings. Rather, I believe good cause has been shown to set down for argument the issue whether a fraud was committed upon the court-martial—and, indeed, upon this Court—by the Chief, Military Justice, of the jurisdiction which tried accused. While the matter warrants further investigation, it appears from the affidavits before us that accused's appointed trial defense counsel made every effort to find out why and upon whose authority Airman Malumphy was sent to an Air Force hospital for psychiatric treatment and evaluation. Despite the fact that he admittedly performed his duties under the direct supervision of the Chief, Military Justice, he was unable to develop the identity of the person responsible. For the reason that the record reflected that accused was examined and treated solely for medical purposes, this Court unanimously held that there was no duty on the psychiatrists who interviewed him to advise him of his rights under Uniform Code of Military Justice, Article 31, 10 USC § 831. United States v Malumphy, 12 USCMA 639, 31 CMR 225. Indeed, we there said, at page 639:

". . . Considering the whole record, including the matters elicited in closed session before the law officer and those in open court, we are compelled to conclude the Government's rebuttal witnesses were under no obligation to warn accused of his rights before interviewing him. It is clear that accused was not, in the eyes of the psychiatrists, a suspect within the purview of Article 31 at the time they saw him. And it is manifest from the uncontroverted evidence that accused was admitted to the hospital for medical examination. The latter, and not whether accused had committed any offense nor other possible legal eventualities, was the concern of the doctors. They interviewed him, as was their duty, with a mind toward medical diagnosis as to whether he was a sick man mentally, possibly in need of care and treatment."

Now, we are coolly informed by defense counsel's immediate military superior, that he, in his capacity of Chief, Military Justice, directed that the accused be hospitalized, not for treatment or diagnosis, but for the purpose of mental evaluation concerning his capacity to stand trial and his responsibility for his offenses. In view of the defense counsel's sworn allegations concerning his extensive efforts to develop this information before the trial and his inability to do so, I am left to wonder whether the Chief, Military Justice, knew of the course of the defense investigation and deliberately remained silent in order to create a false impression before the court-martial and gain the admissibility of any statement accused might make to the doctors and their ultimate opinions.

If such were true, I am of the view that it would constitute deliberate sup-

pression of evidence favorable to the accused by an officer of the United States and, as such, a fraud upon the court-martial. Moreover, since the suppression, if it occurred, led to the affirmance of accused's conviction in this Court, it would equally be a fraud upon this Court. Alcorta v Texas, 355 US 28, 2 L ed 2d 9, 78 S Ct 103 (1957); Napue v Illinois, 360 US 264, 3 L ed 2d 1217, 79 S Ct 1173 (1959); United States v Rutkin, 212 F2d 641 (CA3d Cir) (1954); United States v Dye, 221 F2d 763 (CA3d Cir) (1955). Indeed, the conscious suppression of material evidence is so inconsistent with our concept of ordered liberty that it constitutes a denial of due process. United States v Dye, supra.

It is not my position that there was in fact such deliberate suppression of material evidence in this case. Rather, I believe the respective allegations in the affidavits, considered in light of the close relationship between the Chief, Military Justice, and his counsel, constitute good cause to set this petition down for oral argument and further investigation either at the hands of the appellate counsel or by an impartial individual appointed by this Court. When we do not do so, I fear that we leave open a distinct possibility of a substantial miscarriage of justice. I would simply close that door by finding out all of the facts before ruling on the merits of the petition.