UNITED STATES, Appellee

v

THOMAS J. MILLER, Private, U. S. Army, Appellant

15 USCMA 320, 35 CMR 292

No. 18,130

April 16, 1965

Captain *Francis R. Jones* argued the cause for Appellant, Accused. With him on the brief were Colonel *Joseph L. Chalk* and Major *George O. Taylor, Jr.*

Captain *Michael E. Phenner* argued the cause for Appellee, United States. With him on the brief were Colonel *Edwin G. Schuck* and Lieutenant Colonel *Francis M. Cooper.*

### Opinion of the Court

QUINN, Chief Judge:

The accused was convicted of negligently driving a car into a bridge abutment on Oklahoma State Highway No. 7, and causing the death of a fellow soldier who was a passenger in the vehicle, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial sentenced him to a bad-conduct discharge and forfeiture of all pay and allowances.

On this appeal, the accused contends that testimony as to the alcohol content of a sample of blood, taken from him while he was at a military hospital in an unconscious state, was improperly admitted in evidence. The contention has three aspects: (1) That extracting a sample of blood from the accused's body while he was unconscious violates his right against self-incrimination; (2) that the act deprives him of due process of law; and (3) that it constitutes an illegal search and seizure. Two cases would appear to stand in the way of all three lines of challenge. In Breithaupt v Abram, 352 US 432, 1 L ed 2d 448, 77 S Ct 408 (1957), the Supreme Court of the United States held that the admission in evidence of the content of a blood sample taken from an unconscious accused did not deprive him of his constitutional rights insofar as they apply to a state criminal prosecution. In United States v Williamson, 4 USCMA 320, 15 CMR 320, this Court held that evidence of the analysis of a sample of urine obtained by catheterization of an unconscious accused was admissible in a court-martial. The accused argues that Breithaupt has been sapped of all

320

vitality by later decisions of the Supreme Court of the United States, applying Fourth and Fifth Amendment rights to the states by way of the due process clause of the Fourteenth Amendment. See Mapp v Ohio, 367 US 643, 6 L ed 2d 1081, 81 SC 1684 (1961). And, it would appear that later decisions by this Court have narrowed *Williamson* in its determination that the extraction of body fluid by the means employed does not infringe upon the privilege of self-incrimination. See United States v Musguire, 9 USCMA 67, 25 CMR 329; United States v McClung, 11 USCMA 754, 29 CMR 570; United States v Russell, 15 USCMA 76, 80, 35 CMR 48, footnote 4.

Aside from the effect of later cases, neither *Breithaupt* nor *Williamson* directly considered whether police intrusion into an orifice or other part of the body to extract fluid, such as blood or urine, or to remove an object, such as a capsule, is subject to the constitutional protection against unreasonable search and seizure. See People v Young, 42 Misc 2d 540, 248 NYS2d 287 (1964); State v Kroening, 274 Wis 266, 79 NW2d 810 (1956). It may be that physical penetration of the body of an individual is equally within the protection of the search and seizure rule. The questions then would be whether the penetration of the person was authorized by competent authority upon probable cause, or was incident to an arrest predicated upon probable cause, and whether it was . accomplished under reasonable conditions. See Blackford v United States, 247 F2d 745 (CA 9th Cir) (1957), cert den, 356 US 914, 2 L ed 2d 586, 78 S Ct 672 (1958); United States v Barnaby, 5 USCMA 63, 17 CMR 63, dissenting opinion of Chief Judge Quinn. On the facts of this case, however, it is unnecessary to consider the present scope of *Williamson,* supra, or the continued validity of so much of *Breithaupt* as holds that "a blood test [sample] taken by a skilled technician is not such 'conduct that shocks the conscience,' . . . nor such a method of obtaining evidence that it offends a 'sense of

justice .'" *Breithaupt,* supra, at page 437. We have held admissible testimony of the results of a medical examination of the accused made by a doctor for the purpose of treatment, if there is no "nexus" between the doctor and enforcement agents or accused's superiors who may be interested in those results for the purpose of possible prosecution. United States v Malumphy, 13 USCMA 60, 62, 32 CMR 60; 12 USCMA 639, 31 CMR 225; United States v Baker, 11 USCMA 313, 29 CMR 129; see also Bratcher v United States, 149 F2d 742 (CA 4th Cir) (1945), cert den, 325 US 885, 89 L ed 2000, 65 S Ct 1580 (1945); People v Hargrave, 40 Misc 2d 556, 243 NYS2d 771 (1963); cf. United States v McClung, supra.

At an out-of-court hearing on the defense objection to the laboratory test results of the blood sample extracted from the accused, trial counsel contended the sample was drawn for "diagnostic purposes" and the results, were, therefore, admissible. The law officer asked defense counsel if he agreed that the blood was taken under "sanitary conditions by surgical personnel for diagnostic purposes." Defense counsel admitted he had "no evidence to the contrary"— and indicated he saw no issue for the court-martial's consideration. Nevertheless, the law officer deferred a ruling until the "factual situation" was developed. Open court proceedings were resumed.

The noncommissioned officer in charge of the hospital laboratory testified to the conditions under which the blood was drawn from the accused's unconscious body, and to the fact that it was his "understanding" the blood sample was "wanted . . . for diagnostic purposes." At that point, the law officer again asked defense counsel if he "contest[ed] that this was taken for diagnostic purposes." Defense counsel replied in the negative. The law officer then admitted testimony as to the alcohol content of the sample of the accused's blood. On the basis of the evidence before him and the concessions of defense counsel, the law officer's ruling

was fully supported by *Malumphy* and *Baker*, both supra. See also United States v Hill, 9 USCMA 659, 663, 26 CMR 439. At no time during the remainder of the trial did defense counsel request reconsideration of the ruling; and nothing in the later testimony required the law officer to act *sua sponte* in the interest of justice.

Captain Harold O. Douglass, Jr., the medical officer who ordered the test, was called to testify to the meaning of the laboratory test results in terms of the degree of intoxication. He was the surgeon on call at the hospital when the accused and four others were brought in after the accident. One was dead on arrival; three were conscious or "rapidly regaining consciousness"; and the fifth, the accused, was unconscious. Captain Douglass admitted that sometime before he ordered the blood alcohol test, a military policeman suggested the

test be made. However, Dr. Douglass could not say whether the suggestion "had any influence in . . . [the] drawing" of the blood sample. He felt his decision was dictated by the need "to determine whether . . . alcohol ingestion . . . [was] the cause of unconsciousness or whether . . . [the comatose state] was due directly . . . or solely to the trauma." No blood sample was taken from the others; and none would have been taken from the accused if he had been conscious. The doctor's testimony is consistent with the earlier evidence showing the blood sample was taken solely for medical diagnosis, and supports the law officer's ruling. United States v Malumphy, supra.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.