UNITED STATES

v.

**Larry B. FOLEY, 347 52 9890, Corporal (E–4), U.S. Marine Corps.**

**NMCM 79 0405.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 15 Dec. 1978.

Decided 31 Dec. 1981.

LT P. B. Haskel, JAGC, USN, Appellate Defense Counsel.

CAPT John P. Hertel, USMC, Appellate Government Counsel.

Before BAUM, Senior Judge, and SANDERS and ABERNATHY, JJ.

SANDERS, Judge:

Appellant was tried by general court-martial with members and, contrary to his pleas, found guilty of assault with a means likely to produce grievous bodily harm in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C.A. § 928. A sentence of confinement at hard labor for 18 months, forfeiture of $350.00 pay per month for 18 months, reduction to pay grade E–1 and a bad-conduct discharge was approved by the convening authority.

Appellant has assigned numerous errors, none of which we find meritorious.

## I

### THE COURT–MARTIAL LACKED JURISDICTION OVER THE PERSON OF THE ACCUSED.

Appellant enlisted in the United States Marine Corps on 15 July 1975, for a period of three years. On 17 April 1978, he was admitted to the National Naval Medical Center, Bethesda, Maryland, from Trippler Army Medical Center, Hawaii, evaluated and diagnosed as having had a psychotic organic brain syndrome with drug intoxication, resolved. Appellant was discharged from the Medical Center and attached to Service Company, Support Battalion, Marine Corps Development and Education Command, Quantico, Virginia, where, in May, his commanding officer informed him that he would be held on active duty until his condition was cured or arrangements were made for his further treatment. Appellant expressed no objection to this course of conduct. Having again abused drugs, on 3 June 1978 appellant was readmitted to the National Naval Medical Center suffering from delusions that he was the Son of God. Under treatment there was gradual improvement, but further drug abuse while an unauthorized absentee resulted in a relapse. After additional treatment, however, evidence of psychotic disfunction disappeared and appellant was again discharged from the Medical Center on 14 August, with instructions to report for outpatient consultations twice weekly thereafter.

The Medical Center received appellant for the third time on 13 September 1978, immediately following the offense which was the subject of this trial. He was transferred from the Medical Center to the Correctional Facility, Quantico, on 21 October, charges having been preferred on 20 September.

At no time from the expiration of his enlistment on 14 July 1978, until the date of trial, 11 December 1978, did appellant or anyone acting on his behalf request that he be separated from the Marine Corps.

Applicable Marine Corps regulations provide:

Discharge or release from active duty normally will not be effected when any of the following actions are being taken or contemplated:

a. Physical evaluation board processing. Such processing is not considered completed until the Secretary of the Navy has taken final action on the board proceedings and the Commandant of the Marine Corps has promulgated such action;

b. Medical board hearing, or;

c. Necessary medical or dental treatment.

An enlisted Marine on active duty whose term of enlistment expires while he/she is suffering from disease or injury incident to service and not due to his/her own misconduct, and who needs medical care or hospitalization, may be retained on active duty, with his/her consent, until he/she recovers to the extent that he/she is able to meet the physical requirements for reenlistment or until it is determined that recovery to that extent is impossible.

Marine Corps Separation and Retirement Manual, para. 7006.

█ It is therefore apparent that since appellant was undergoing treatment for his illness, either on an inpatient or out-patient basis, continuously and without objection, from the date his enlistment was to expire until well after the commission of the offense, the Marine Corps' failure to discharge him during this interval was consistent with its administrative procedures.

█ Nor was the procedure inconsistent with military law. A member of the armed forces may be retained beyond the termination of his enlistment for good cause. *United States v. Cox*, 49 C.M.R. 350 (N.C.M.R. 1974). Even when good cause does not exist, if the service member is not discharged and he is satisfied to remain on active duty as evidenced by his performance of duties and receipt of pay and benefits, his status as a member of the service continues, *United States v. Hout*, 19 U.S.C. M.A. 299, 41 C.M.R. 299 (1970), and while thus awaiting discharge, he is subject to the Code. Article 2, UCMJ, 10 U.S.C. § 802.

## II

THE RECORD LEAVES REASONABLE DOUBT THAT APPELLANT WAS MENTALLY RESPONSIBLE AT THE TIME OF THE OFFENSE BECAUSE OF THE ABSENCE OF EVIDENCE THAT ANY INGESTION BY HIM OF PCP WHICH CONTRIBUTED TO HIS INSANITY WAS "VOLUNTARY" OR THAT HE WAS MENTALLY RESPONSIBLE AT THE TIME OF HIS PURPORTED INGESTION OF PCP AND BECAUSE THE RECORD FAILS TO ESTABLISH APPELLANT KNEW AT THE TIME OF THIS PURPORTED PCP INGESTION THAT THE PCP WOULD CAUSE HIM TO BECOME VIOLENT.

Two psychiatrists who had examined appellant on 13 September 1978, following the commission of the offense, testified at trial. Both concluded that he was psychotic and agreed that as the result of a mental disease or defect he lacked, at the time the offense was committed, substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *United States v. Frederick*, 3 M.J. 230 (C.M.A.1977). Dr. K. interviewed appellant for approximately one hour at Quantico and ordered him immediately transferred to Bethesda. Without benefit of any tests or medical records, Dr. K. was unable to tell if appellant's psychosis was drug induced or functional. Dr. R. who had treated appellant earlier in the summer and who was aware of his history, received appellant at Bethesda and ordered tests which established the presence of phencyclidine (PCP) in his system. Dr. R. continued appellant's treatment until 19 October 1978, when it was determined that appellant was fit to be confined and to stand trial. It was Dr. R's opinion that the psychosis from which appellant was suffering was induced by drugs, and we are convinced that the evidence supports this conclusion.

█ Criminal insanity at the time of an offense is normally a complete defense to the offense. However, when it can be shown that the accused's mental defect or disease was the result of his voluntary use of drink or drugs and that he knew the possible ill effects of the use, the defense, at least to a general intent offense, is no longer available. *United States v. Hernandez*, 20 U.S.C.M.A. 219, 43 C.M.R. 59 (1970); *United States v. Santiago-Vargas*, 5 M.J. 41 (C.M.A.1978).

█ Twice during the summer of 1978 and before the commission of the offense

appellant was hospitalized at the National Naval Medical Center and then released, his psychotic syndrome having become resolved. During a lucid period he was told by Dr. R. that he should avoid contact with any illicit drugs in the future or there would be an excellent chance that his mental condition would become much worse. While there is no evidence that appellant had a history of extreme violence it is noted that his initial hospitalization in Hawaii was the result of an "altercation" with his co-workers.

We, therefore, find that the defense of lack of mental responsibility was not available to appellant in this case. The evidence in our opinion establishes that he ingested phencyclidine voluntarily during a time when he had use of his faculties and with full knowledge of the drug's probable melancholy effects. Further, it is apparent that had appellant not used the illicit drug he would not have become psychotic and committed this offense.

### III

THE MILITARY JUDGE FAILED TO PROVIDE THE COURT–MARTIAL MEMBERS WITH MEANINGFULL AND CORRECT INSTRUCTIONS AS TO HOW THEY SHOULD DETERMINE WHETHER APPELLANT'S ASSERTED PCP INGESTION BEFORE THE OFFENSE WAS "VOLUNTARY" SO AS TO PRECLUDE THE DEFENSE OF INSANITY.

■ Recognizing that the question of appellant's mental responsibility was at the heart of his defense, the military judge instructed at great length on this issue, covering adequately and in detail the law set forth in *Frederick, Hernandez* and *Santiago-Vargas, supra,* as it applies to the case. Attentive court members could not have been misled nor could appellant have been prejudiced. The fact that an accused had experienced prior psychiatric difficulties and treatment does not, standing alone, give rise to an inference that his subsequent ingestion of drugs was involuntary. This is especially true where, as here, the accused's

treatment had resulted in his return to lucidity and his release to outpatient status.

### IV

THE MILITARY JUDGE ERRED IN ADMITTING TESTIMONY DESCRIBING APPELLANT'S INVOLUNTARY STATEMENTS TO CIVILIAN POLICEMEN.

On 13 September 1978, at or about 4 a. m. Corporal B. of the Quantico, Virginia Police Department was a passenger in the patrol car being driven by Officer L. As they were cruising west on the main business street of Quantico they noticed appellant approaching them on the north side of the street. When he waved and stepped off the curb, Officer L. stopped and appellant walked around the front of the car to the driver's side. Corporal B. noticed that appellant was dressed only in pants and shoes and that he had what appeared to be blood stains on his chest and neck. From the testimony of Corporal B. it is gleaned that a conversation substantially as follows ensued:

Appellant: Hi. Didn't you get a call about me?

Cpl B: No. Why?

Appellant: Didn't you get a call about me?

Cpl B: No. What happened?

Appellant: I just killed a man.

Cpl B: (Startled) What?

Appellant: I just stabbed a man.

Cpl B: (Concerned that an injured person could by lying unattended in the town) Where?

Appellant: In the barracks.

Cpl. B: Do you know where the man is?

Appellant: In the hospital because I saw the ambulance go toward the base and then return. After leaving the barracks I went down the railroad tracks in the direction of the power plant. I'm sorry. I didn't want to kill anybody. I decided to kill my self and I've cut my wrists. (Raises his hands to car window level).

Cpl B: (Notices appellant's hands are bloody, gets out of car, walks around to

appellant and reaches out toward him.) May I look at your hand?

Appellant: Do you want the knife? I have the knife that I stabbed him with. (Takes knife from pocket and gives it to Cpl B.)

Cpl B: (Notices severity of cuts on appellant's wrists). You need medical attention.

Appellant: Take me to the hospital.

Cpl B: All right. (Frisks appellant) Get in the back seat.

█ The statement obtained by civilian police from a service member who is in the custody of the police may not be used at the court-martial of the service member unless he was advised that he had a right to remain silent, that any statement he made might be used as evidence against him and that he had a right to the presence of a retained or appointed attorney. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). Additionally, the service member, if a suspect, must be warned in accordance with Article 31(b), UCMJ, 10 U.S.C. § 831(b), if the police interrogation, whether or not custodial, is in furtherance of a military investigation or if the police are acting in any sense as the instrument of the military. *United States v. Penn*, 18 U.S.C.M.A. 194, 39 C.M.R. 194 (1969); *United States v. Schlomann*, 16 U.S.C.M.A. 414, 37 C.M.R. 34 (1966).

█ When, however, the service member questioned is neither in custody, (that is, he has not been deprived of his freedom of action in any significant way, *United States v. Tempia, supra*), nor a suspect, and the questions are not designed to obtain an incriminating statement, there is no requirement for any warning at all. *United States v. Temperley*, 22 U.S.C.M.A. 383, 47 C.M.R. 235 (1973); *United States v. Graham*, 21 U.S.C.M.A. 489, 45 C.M.R. 263 (1972). Similarly, a declaration that is spontaneous and not the result of any action by the police cannot, by its nature, be preceded by any warning and is not subject to the exclusionary rules. *See United States v. Miller*, 7 M.J. 90 (C.M.A.1979).

█ Corporal B. did not extend to appellant either a *Miranda* or an Article 31(b), UCMJ, warning during the conversation we have summarized. In our opinion, neither was required. Appellant's initial declaration that he had stabbed and killed a man was unsolicited, spontaneous and completely unexpected. Although Corporal B. testified that following this admission he would not have let appellant out of his sight had appellant attempted to leave the area, during the remainder of the parley appellant was not in custody, and hence a *Miranda* warning was unnecessary. The conversation was initiated by appellant. Most of it took place while appellant was standing in the street and the police officers remained in their automobile. Nothing in the circumstances or environment surrounding the interview suggests the slightest degree of compulsion or psychological pressure on appellant. Likewise, there is no evidence that the officers were acting in any way on behalf of the military thereby necessitating an Article 31(b) warning.

█ In addition to contending that his statement to the police was inadmissible because he was not properly warned, appellant also claims that his statement was "involuntary" because his use of drugs destroyed his ability to choose whether to speak or not. This argument reflects a misunderstanding of the term "involuntary". In the context of military law it can apply only when the statement was "obtained", not when, as here the statement was made spontaneously. Article 31(d), UCMJ, *see* J. MUNSTER AND M. LARKIN, MILITARY EVIDENCE § 7.2 (2d ed. 1978). The test, therefore, for determining the admissibility of the spontaneous statement of a person under the self-induced influence of drink or drugs is not whether it was voluntary, but rather, whether the statement is trustworthy. 3 J. WIGMORE, EVIDENCE § 841 (J. Chadbourn rev. 1970). The evidence, in our opinion, establishes that appellant's statement was trustworthy. Regardless of his earlier mental condition

and its effect on his commission of the offense, when he made his admission to the police, appellant was calm, coherent, lucid and spoke in complete sentences, although with a certain understandable tension in his voice. He gave the officers no reason to believe he was intoxicated, and the accuracy of his statement was confirmed by information subsequently learned.

The military judge, therefore, did not err in admitting appellant's statement to the police into evidence.

## V

THE MILITARY JUDGE ERRED IN ADMITTING INTO EVIDENCE PROSECUTION EXHIBIT 12, A LABORATORY REPORT OF THE ANALYSIS OF BLOOD AND URINE SAMPLES TAKEN FROM APPELLANT.

When appellant was readmitted to National Naval Medical Center on 13 September 1978, for reevaluation and treatment, he was examined by Dr. R, who, because of his knowledge of appellant's prior history, directed the taking of blood and urine samples to determine if there were drugs, particularly PCP, in his system. Appellant was not told that he did not have to give these samples or otherwise warned in accordance with Article 31, UCMJ.

Dr. R. realized that the results of these tests would, in all probability, be used in future legal proceedings and he was extremely careful in supervising the taking and handling of the specimens. Nevertheless, the sole reason for the tests was diagnostic, not prosecutorial. Hence, no warning or cautionary advice was required. *United States v. Miller*, 15 U.S.C.M.A. 320, 35 C.M.R. 292 (1965). *See United States v. Baker*, 11 U.S.C.M.A. 313, 29 C.M.R. 129 (1960); *United States v. Fisher*, No. 71 1405 (N.C.M.R. 30 July 1971). Accordingly, the military judge did not err in admitting the laboratory report, Prosecution Exhibit 12, into evidence.

## VI

THE MILITARY JUDGE ERRED IN NOT SUBMITTING THE ISSUE OF

THE ADMISSIBILITY OF PROSECUTION EXHIBIT 12, A LABORATORY REPORT OF THE ANALYSIS OF BLOOD AND URINE SAMPLES TAKEN FROM APPELLANT, TO THE MEMBERS AFTER HIS INTERLOCUTORY DECISION CONCERNING ADMISSIBILITY.

Appellant argues that the issue of the admissibility of this document should have been submitted to the members because the giving of blood or urine is a "statement" triggering the applicability of paragraph 140 a(2), *Manual for Courts-Martial, 1969*. This contention, long debated, has recently been laid to rest. *United States v. Armstrong*, 9 M.J. 374 (C.M.A. 1980). The giving of body fluids is not tantamount to a communication and, hence, is not subject to the self-incrimination safeguards required by Article 31, UCMJ, and the Fifth Amendment, United States Constitution. Paragraph 140 a(2) of the *Manual* is, therefore, not applicable. The military judge's interlocutory ruling was correct and final. Additionally, we note that no factual issue concerning the "voluntariness" of the taking of the specimens was raised by the appellant before the members, only before the military judge out of the members' presence.

## VII

TRIAL COUNSEL'S ARGUMENTS ON FINDINGS AND SENTENCE RESTED ON REPEATED INFLAMMATORY REFERENCES TO MATTERS NOT IN EVIDENCE OR MATTERS IN EVIDENCE FOR LIMITED PURPOSES OTHER THAN THAT FOR WHICH TRIAL COUNSEL REFERRED TO THESE MATTERS IN HIS ARGUMENTS.

Trial counsel's arguments were permissible comments on the evidence and the reasonable inferences which might be drawn therefrom. The arguments were not objected to by defense counsel, except upon one occasion not relevant to this assignment

of error. The arguments were carefully monitored by the military judge and we find nothing prejudicial in them. *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); *United States v. Poteet*, 50 C.M.R. 73 (N.C.M.R.1975).

## VIII

## APPELLANT WAS DENIED HIS RIGHT TO COMMENT ON THE POST-TRIAL REVIEW.

 Defense counsel requested an extension of 15 days in which to comment upon the staff judge advocate's review because of counsel's "present involvement with a general courts-martial [sic] and a number of special courts-martial". The convening authority's denial of this request was not, in our opinion, an abuse of discretion. Nothing in the record indicates that counsel was extraordinarily busy during this period and the proposed extension would have resulted in the convening authority having to delay his action beyond the time mandated by *Dunlap v. Convening Authority*, 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974). Counsel's failure ever to submit a reply or a brief as permitted by Article 38(c), UCMJ, 10 U.S.C. § 838(c), may reflect his position concerning the adequacy of the review.

## IX

## THE POST-TRIAL REVIEW OF THE STAFF JUDGE ADVOCATE WAS MATERIALLY INCOMPLETE AND MISLEADING.

We have examined the staff judge advocate's twenty-four page review and find it adequate. The review carefully summarizes the evidence and discusses it in the light of the elements of the offense, commenting in particular upon the admissibility of appellant's statement to the police and the laboratory report. Appellant's various motions made prior to his entering his pleas were analyzed as were the issues of his mental responsibility and the effect of drug ingestion thereon. Appellant's background and his evidence in extenuation and mitigation were called to the attention of the convening authority, and the instructions of the military judge were evaluated. In short, the law and the facts in this case were precisely and accurately presented to the convening authority along with the staff judge advocate's opinions and recommendations. No more was required. Paragraph 85*b*, MCM.

For the above reasons, all of the assignments of error are rejected. Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge BAUM and Judge ABERNATHY concur.