UNITED STATES, Appellee

v

DONALD A. FORSLUND, Airman Third Class, U. S. Air Force, Appellant

10 USCMA 8, 27 CMR 82

No. 11,584

Decided October 31, 1958

*Lieutenant Colonel Robert O. Rollman, Lieutenant Colonel Ellis L. Gottlieb,* and *Major Edmund B. Sigman* were on the brief for Appellant, Accused.

*Lieutenant Colonel Robert W. Michels, Lieutenant Colonel John F. Hannigan, Major Fred C. Vowell,* and *Major Carl Goldschlager* were on the brief for Appellee, United States.

Opinion of the Court

HOMER FERGUSON, Judge:

The accused was convicted of violating Article 134, Uniform Code of Military Justice, 10 USC § 934, by wrongfully using morphine.

The question before this Court concerns the admissibility in evidence of the results of tests performed on urine specimens furnished by the accused pursuant to an order of his superior officer.

The order came about in the following manner: The accused was apprehended as a suspected user of narcotics. The Office of Special Investigations agent questioned him and asked him to supply a urine specimen. The accused replied that he wouldn't.[1] The agent then took the accused before Lieutenant Sanborn, the Squadron Adjutant, and Lieutenant Sanborn ordered the accused to supply the agent with three specimens. The accused was taken to the hospital, could not comply with the order, was then taken to Air Police Operations where he was placed in a detention cell and denied latrine privileges pending compliance. Later that evening and the following morning the accused furnished three specimens as ordered.

When a stipulation of testimony concerning the results of the urinalysis was offered in evidence, defense counsel made timely objection contending *inter alia* that the evidence was inadmissible because the specimens were obtained in violation of Article 31 of the Code, supra, 10 USC § 831. In an out-of-court hearing the accused testified he gave the specimens because of the order and because of a fear of catheterization. In this connection it is noted that the accused, on another occasion three weeks earlier, had been apprehended as a narcotics suspect and was asked to furnish a specimen. When he refused at that time, a doctor gave him an order to comply. Thereafter, a blood sample was taken from him and he was catheterized, an experience he described as quite painful.

It is not necessary to determine whether fear of another catheterization was a motivating factor in accused's compliance with the order of Lieutenant Sanborn. The accused testified he gave the specimens at least partially because of the order. As was said in United States v Jordan, 7 USCMA 452, 22 CMR 242, "the force of a military order by a superior officer is one of the strongest known to military law" and such an order cannot be employed to "compel a person against his will to produce his urine for the purpose of using it, or an analysis of it, as evidence against him in a court-martial proceeding" without violating Article 31. Thus, the illegal order alone provides us with with the compulsion, even without the possibility of a fear of catheterization or the confinement present in this case.

The evidence, having been obtained in violation of Article 31, supra, is inadmissible. United States v Eggers, 3 USCMA 191, 11 CMR 191; United States v Minnifield, 9 USCMA 373, 26 CMR 153. This, we believe, is fundamental and essential if we are to enforce the provisions of Article 31 and uphold the intent of the Congress in enacting it. As we stated in *Minnifield,* supra:

"If this Court is to succeed in preserving the Uniform Code of Military Justice as a truly living document, it cannot permit a gradual whittling away of an accused's most important safeguard until nothing is left of it but a heap of bare bones. In times of stress, as well as in times of calm, it is a liberal and enlightened, rather than a narrow and grudging, application of Article 31 that is best calculated to insure to the military the preservation of our traditional concepts of justice and fair play."

Counsel have referred to the author judge's separate opinion concurring in the result in the *Jordan* case, supra. In that opinion, the issue of admissibility was not reached because the only question in the case dealt with the validity of the order. Here, the question of admissibility is specifically raised and we have no hesitation in finding that where evidence is secured in violation of any of the provisions of Article 31, supra, it is inadmissible. To hold otherwise would effectively

---

[1] The evidence on this point discloses that the agent first testified the accused "couldn't" furnish a specimen and later on cross-examination unequivocally stated that the accused "wouldn't" comply with the request.

deprive Article 31 of its force and make of it a hollow gesture.

Nor can we condone in any manner the use by the military of orders held by this Court to be illegal. It is well to remember the lesson of Mr. Justice Holmes, where, in another connection, he stated:

". . . It is desirable that criminals should be detected, and to that end that all available evidence should be used. It also is desirable that the government should not itself foster and pay for other crimes, when they are the means by which the evidence is to be obtained. . . . [F]or my part I think it a less evil that some criminals should escape than that

the government should play an ignoble part." [See Mr. Justice Holmes' dissent in Olmstead v United States, 277 US 438, 470, 48 S Ct 564, 72 L ed 944.]

The findings of guilty of the Charge and specification are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the result solely for the reason that the law in this area has become fixed by prior decisions of the Court. See my dissenting opinion in United States v Jordan, 7 USCMA 452, 22 CMR 242.