Robert A. WALTERS, Plaintiff,

v.

SECRETARY OF DEFENSE, et al., Defendants.

Civ. A. No. 81–962.

United States District Court,
District of Columbia.

March 2, 1982.

Barton F. Stichman, David F. Addelstone, Ronald Simon, Washington, D.C., for plaintiff.

John Oliver Birch, Asst. U. S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON, D. PARKER, District Judge.

In this action plaintiff Robert Walters seeks declaratory and injunctive relief against the Secretary of Defense and other officials. He seeks to upgrade the character of his discharge from the United States Marine Corps from general to honorable. In 1973 Walters received a general discharge following an administrative proceeding in which he was found involved in drug abuse activity disclosed through a compelled urinalysis examination. He contends that his discharge must be recharacterized as honorable in light of this Court's decision in *Giles v. Secretary of the Army*, 475 F.Supp. 595 and 84 F.R.D. 374 (D.D.C.1979), *modified*, 627 F.2d 554 (D.C.Cir.1980). That class action proceeding resulted in an order upgrading all less than honorable discharges given U.S. Army personnel based in whole or in part on evidence of drug abuse derived from compelled urinalyses. Counsel for Robert Walters also seeks classwide relief for former servicemembers of the Marine Corps, Navy and Air Force, claiming that they are entitled to the same relief as that granted former Army servicemembers in *Giles*.

The plaintiff has filed a motion for summary judgment on the authority of *Giles* and a motion for class certification. Defendants have filed a cross motion for summary judgment asserting, first, that plaintiff's action is barred by the statute of limitations; second, that the Court should not exercise its jurisdiction because plaintiff failed to exhaust his administrative remedies; and third, that because the United States Court of Military Appeals in two recent cases [1] ruled that the compelled taking of body fluids is not violative of the self-incrimination prohibition of Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (1975),[2] *Giles* no longer

---

1. *United States v. Armstrong*, 9 M.J.R. 374 (C.M.A.1980); *United States v. Lloyd*, 10 M.J.R. 172 (C.M.A.1981).

2. Article 31 of the UCMJ provides:
   (a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.
   (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and

that any statement made by him may be used as evidence against him in a trial by court-martial.
   (c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.
   (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

provides authority for the relief plaintiff seeks. The defendants also oppose class certification.

After consideration of the parties' legal memoranda, and with the benefit of oral argument, the Court rejects the defendants' arguments and grants summary judgment and the class relief requested by the plaintiff. The reasons for the Court's conclusions are set out in the discussion which follows.

## I. BACKGROUND

The undisputed material facts may be briefly stated. The drug abuse program involved in this proceeding was an enormous undertaking. It began in 1972 and, within 14 months, the military had subjected servicemembers to 4,400,000 urinalyses. If the test indicated illegal use of drugs, the abusing servicemember was issued a less than honorable administrative discharge.[3] Approximately 29,000 drug abusers, most of whom were identified through this program, were gleaned from the ranks of all branches of the military for drug abuse between 1970 and 1975 and were given less than honorable discharges.

Plaintiff Walters was one of those so discharged. He entered the Marine Corps in September 1973. Shortly thereafter he was ordered by Corps authorities to render a urine sample as part of the urinalysis testing program. When the test indicated that he had used phenobarbitol, the authorities questioned him and found that he had been using drugs during the year prior to enlistment. The Corps then initiated administrative discharge proceedings against him for fraudulent enlistment through concealment of preservice drug use. He was severed from the Corps with a general discharge on November 8, 1973.

Walters sought relief before the Naval Discharge Review Board[4] and requested an upgrade of his discharge in the Spring of 1980. However, shortly before a scheduled hearing, he withdrew his petition and subsequently brought this action on his own behalf and on behalf of similarly situated former members of the Marine Corps, the Navy and the Air Force.

## II. LEGAL ANALYSIS

### A. *Statute of Limitations*

The defendants argue that this action is barred by the six-year limitation imposed by 28 U.S.C. § 2401(a). That section provides that civil actions commenced against the United States shall be barred unless filed within six years after accrual of a right of action. Because this suit was not filed until April 22, 1981, and Walters was discharged in November 1973, the defendants claim that his suit is time-barred.

■ The Court concludes that the defendants are incorrect. Courts have frequently entertained challenges to court-martials long after the six-year period has expired. *See, e.g., Homcy v. Resor,* 455 F.2d 1345 (D.C.Cir.1971); *Ashe v. McNamara,* 355 F.2d 277 (1st Cir. 1965); *Calhoun v. Lehman,* C.A. No. 78–0988 (D.D.C. January 27, 1982). There is no compelling reason why a different rule should apply for administrative discharges.[5]

---

**3.** There are three types of administrative discharges—honorable, general (sometimes referred to as under honorable conditions), and under other than honorable conditions (formerly called an undesirable discharge).

Administrative discharges are not Congressionally authorized but stem from a Department of Defense directive, codified at 32 C.F.R. § 41. The derogatory discharges expressly authorized by Congress are the bad conduct and dishonorable discharges, both imposed solely by sentence of a court-martial. Articles 18, 19, UCMJ, 10 U.S.C. §§ 818, 819.

**4.** The Board was created pursuant to 10 U.S.C. § 1553 for the sole purpose of reviewing the character of servicemembers' discharges from military service; similar boards exist for the other branches of the military. *See* 32 C.F.R. Part 724.

**5.** In *Calhoun v. Lehman,* a former naval enlisted man sought to upgrade his dishonorable discharge 34 years after its receipt. Judge Gesell concluded: "Petitions for writs of habeas corpus are not barred by traditional time limitations, *see Palmer v. Ashe,* 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951), and it is appropriate to apply the same rule to this closely

■ Even if the six-year limitations period applies in a case for an upgrade of a military discharge, this Court in *Wood v. Secretary of Defense*, 496 F.Supp. 192, 197–98 (D.D.C.1980), concluded that the cause of action does not accrue until the appropriate discharge review board denies the servicemember's request for an upgrade. Under the UCMJ, a discharged servicemember has 15 years after the discharge to petition the military board for review. 10 U.S.C. § 1553(a). Since the time for Walters to bring such a petition has not expired, his cause of action has not yet accrued and the statutory time under section 2401(a) has not yet begun to run. Therefore, this action is not time-barred.[6]

**B. *Exhaustion of Administrative Remedies***

Under 10 U.S.C. § 1553(b), the Naval Discharge Review Board could have upgraded Walters' discharge had he not withdrawn his petition for review filed with that Board. Because the plaintiff failed to exhaust his administrative remedies the defendants argue that this Court should not exercise jurisdiction. In urging that position they rely on a long line of case authority which holds that, for reasons of judicial economy and primary jurisdiction, all available avenues of military administrative appeal must be exhausted before judicial review is available. *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C.Cir.1977), *cert. de-*

*nied*, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978); *Hayes v. Secretary of Defense*, 515 F.2d 668, 672 (D.C.Cir.1975); *Hodges v. Callaway*, 499 F.2d 417, 422 (5th Cir. 1974). However, because the doctrine is based on principles of comity, its application is within the discretion of the district court. *See Sohm v. Fowler*, 365 F.2d 915, 918 (D.C.Cir. 1966). When "special circumstances" exist (*id.*), exhaustion of military remedies is not required. *See Nelson v. Miller*, 373 F.2d 474 (3rd Cir.), *cert. denied*, 387 U.S. 924, 87 S.Ct. 2042, 18 L.Ed.2d 980 (1967); *Ogden v. Zuckert*, 298 F.2d 312 (D.C.Cir.1961); *Calhoun v. Lehman, supra.*

■ Courts have developed a number of exceptions to the exhaustion requirement. It is not required if administrative remedies are inadequate or not efficacious, *Humana of South Carolina, Inc. v. Califano*, 590 F.2d 1070, 1081 (D.C.Cir.1978); where pursuit of administrative remedies would be futile, *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 703 (D.C.Cir.1975); or where irreparable injury would result unless judicial review is permitted, *Sears, Roebuck and Co. v. N.L.R.B.*, 473 F.2d 91, 93 (D.C.Cir.1972), *cert. denied*, 415 U.S. 950, 94 S.Ct. 1474, 39 L.Ed.2d 566 (1974). However, none of these exceptions apply here. In fact, the defendants have submitted an affidavit[7] which, they contend, shows that Walters would have definitely received an upgrade of his discharge had he pursued his

---

related type of action. Although petitioner is not in custody his predicament is analogous to that of an individual long held in custody."

The "predicament" confronted by an individual with a general discharge differs only in degree from that faced by the recipient of a dishonorable discharge. *See infra*, note 11. As such, the analogy to habeas corpus proceedings applies here as well.

6. The defendants have made no effort to confront an anomalous result of their limitations argument. If a six-year statute of limitations, accruing from the date of discharge, applies to suits for upgrade of an administrative discharge while, at the same time, a 15-year limitations period exists for filing a petition with a service's discharge review board, then courts would lack jurisdiction over the military tribunal's decision on any discharge between six and 15 years old. Absent an explicit Congres-

sional directive, this Court will not readily bestow non-reviewable status upon a military tribunal.

7. Affidavit of W.R. Wright, head of Separation and Retirement, U.S. Marine Corps Headquarters, Defendants' Cross-Motion for Summary Judgment, Exhibit 2. The affidavit actually states only that if Walters were discharged from the Marine Corps, under current regulations, he would receive an honorable discharge; it does not state that his discharge would have been upgraded by the Naval Discharge Review Board. However, because both the plaintiff and defendants agree that the current regulation (32 C.F.R. § 70.6(c)(1)(ii) (1981)) requires an upgrading in Walters' case, and because the Court's reading of the regulations leads to the same conclusion, the inadequacy of the affidavit is of no consequence.

administrative remedies. That result, they point out, is required by two current military regulations, 32 C.F.R. §§ 41.7(f) and 70.6(c)(1)(ii). Section 41.7(f) requires that servicemembers who are discharged from the military today based on evidence gathered during a compelled urinalysis must receive an honorable discharge.[8] Section 70.6(c)(1)(ii) mandates that a discharge review board apply the current regulation—i.e., section 41.7(f)—in reviewing the propriety of a less than honorable discharge.[9]

■ However, while the standard exceptions to the exhaustion doctrine do not apply here, neither do the often stated reasons for requiring exhaustion. Those reasons are several: the discharge board or the agency must be given the opportunity to develop a factual record and apply its expertise to that record and courts should strive to avoid "piecemeal" appeals. *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1157 (D.C.Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). *See also McKart v. United States*, 395 U.S. 185, 194, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Committee for GI Rights v. Callaway*, 518 F.2d 466, 474 (D.C.Cir.1974). Because the outcome of an administrative appeal is certain in this case—namely, all parties agree that Walters would have received an upgraded discharge had he not withdrawn his petition for review—this Court sees no conceivable need for an amplified administrative record nor any benefit to be gained from military expertise. And because the outcome of a military discharge board's review is, under current military regulations, certain for all

dischargees similarly situated with Walters, this Court would not avoid "piecemeal" appeals by requiring exhaustion.

■ The Supreme Court has emphasized that application of the exhaustion doctrine "requires an understanding of the purposes of the particular administrative scheme involved." *McKart v. United States*, 395 U.S. at 193, 89 S.Ct. at 1662; *see also, Association of National Advertisers, Inc. v. FTC*, 627 F.2d at 1156; *Committee for GI Rights v. Callaway*, 518 F.2d at 474. In this "particular administrative scheme,"the doctrine is inappropriate. In fact, rather than furthering any substantive jurisprudential aims, adoption of the defendants' exhaustion argument would result in a "piecemeal" remedying of the effects of the military's unlawful drug detection program. Because the current regulations require an upgrade, the military would avoid classwide relief from a federal court if exhaustion were required for an individual servicemember. As a result, those servicemembers who are unaware of the possibility of an upgrade—and it is highly probable that their number is considerable—[10]will continue to be burdened with a less than honorable discharge.

Such a prospect cannot be dismissed lightly. The adverse effects of a general discharge are well-known and documented. As this Court stated in *Giles*: "Not only is a person's reputation injured and jeopardized" through receipt of a general discharge, "but employment opportunities are restricted, both in the public and private sector." 475 F.Supp. at 598.[11] Application

---

**8.** Section 41.7(f) provides that the military may either introduce urinalysis test results derived from the drug abusers' detection program and issue an honorable discharge, or exclude such evidence and issue whatever discharge is warranted by the balance of the servicemember's record.

**9.** Section 70.6(c)(1)(ii) provides that a discharge is "deemed to be equitable" unless there is "substantial doubt that the applicant would have received the same discharge if relevant current policies and procedures had been available to the applicant at the time of the discharge proceedings under consideration." Such "substantial doubt" exists because of sec-

tion 41.7(f) and thus Walters' discharge could not be deemed equitable.

**10.** As this Court stated in certifying a class in *Giles*: "Most of the members of the class certified herein are unlikely to know either that there are agencies available by which they can obtain an upgrade in their discharge or that they were unlawfully issued a less than honorable discharge." 84 F.R.D. at 375–376.

**11.** A general discharge, unlike a dishonorable or bad conduct discharge, does not cause loss of veteran's benefits. However, courts have found, as did this Court in *Giles*, that a general

of the exhaustion doctrine in this case would directly conflict with the concerns motivating this Court and the Court of Appeals in *Giles*.[12]

Adoption of the military's exhaustion argument would prevent a federal court from remedying on a wide scale that which a military discharge board is capable of correcting solely on a case-by-case basis. Such a result would not be sensible. Indeed, recognizing the inappropriateness of the doctrine in this sort of setting, the Court of Appeals rejected a similar exhaustion argument in *Committee for GI Rights v. Callaway*, 518 F.2d at 473–74, because "the military tribunals are not designed to handle actions involving so large a class and seeking declaratory and injunctive relief." The exhaustion doctrine should not be used to shield the military from an obligation to correct discharge certificates which have been unlawfully issued. This Court, therefore, exercises its discretion and will not require Walters to exhaust his administrative remedies.

## C. *The Court of Military Appeals' Post-Ruiz Decisions*

■ In *United States v. Jordan*, 7 C.M.A. 452, 22 C.M.R. 242 (1957), the Court of Military Appeals held that an order compelling a urine sample to secure evidence for a court-martial proceeding violated the prohibition against compelled self-incrimination of Article 31. The following year, the same court in *United States v. Forslund*, 10 C.M.A. 8, 27 C.M.R. 82 (1958), took the next step and held that evidence procured as a result of such an illegal order was inadmissible in a court-martial proceeding. In *United States v. Ruiz*, 23 C.M.A. 181, 48 C.M.R. 797 (1974), the court extended its earlier decisions and held that evidence obtained in a compelled urinalysis was also inadmissible in administrative discharge proceedings.

In October 1980, however, the Court of Military Appeals reexamined the scope of Article 31. In *United States v. Armstrong*, 9 M.J.R. 374 (C.M.A.1980), the court concluded that a compelled blood sample taken to determine a servicemember's level of intoxication is admissible evidence in a court-martial proceeding. The court reasoned that such evidence is admissible under the Fifth Amendment and that Article 31 and the Constitution are co-extensive. In *United States v. Lloyd*, 10 M.J.R. 72 (C.M.A. 1981), the court reaffirmed its view that the statute provides no greater protection to an accused than does the Constitution.

Relying on their reading of the two decisions, the defendants urge this Court to abandon the Court of Appeals' ruling in *Giles* and deny the plaintiff's motion for summary judgment. They argue that since this Court and the Court of Appeals relied primarily on *Ruiz* for the classwide relief order, the overruling of *Ruiz* leaves *Giles* without any force.

The defendants' argument lacks merit. Neither *Armstrong* nor *Lloyd* explicitly overruled *Ruiz*.[13] But even if the court has impliedly overturned *Ruiz*, this Court, for

discharge "can inflict both social and economic injury upon its recipient." *Roelofs v. Secretary of the Air Force*, 628 F.2d 594, 603 (D.C.Cir. 1980) (Bazelon, J., concurring). *See also Kauffman v. Secretary of the Air Force*, 415 F.2d 991, 995 (D.C.Cir.1969); *Van Bourg v. Nitze*, 388 F.2d 557, 559 n. 1 (D.C.Cir.1967).

**12.** In *Giles*, too, the military sought dismissal of the case for failure to exhaust administrative remedies. In that case, the plaintiff had, in fact, twice sought correction of his records by the Army review board and both times his application was denied. Nevertheless, the Army argued that court action was premature because, following the second administrative denial, the military promulgated the rule now codified at 32 C.F.R. § 70.6(c)(1)(ii); thus, the Army contended, a third attempt at correction would have been favorably received by the review board. The Court of Appeals rejected the argument. 627 F.2d at 555 n.2.

**13.** In *Armstrong*, two of the three deciding judges filed a concurring opinion in which they disassociated themselves from "the several statements in the principal opinion that imply a different construction of [Article 31]" than that set forth in *Ruiz*. 9 M.J.R. at 384. Rather, the judges agreed solely with the principal opinion's conclusion that a new version of Military Rules of Evidence required the admissibility of the blood sample.

several reasons, need not abandon *Giles. Ruiz* did not provide the primary basis for the decision of our Court of Appeals in *Giles:*

> Given the circumstances of this case, including the Army's adoption of *Ruiz* following the issuance of the opinion by the Court of Military Appeals . . . we find it unnecessary to pass upon the validity of the decision in *Ruiz. Rather, we deal here with certain inequities that have arisen by virtue of inconsistencies in the application of Army regulations* 627 F.2d at 557 (emphasis added).

In *Giles,* the inequities troubling this Court and the Court of Appeals were two-fold. First, while the plaintiff Giles was burdened for life with a general discharge, the post-*Ruiz* regulations [14] require that servicemembers whose discharge is based on a compelled urinalysis receive an honorable discharge. 627 F.2d at 555 n.3. Second, while the regulations [15] also require an upgrading of the discharge received by a former servicemember for whom a compelled urinalysis led to removal from the military, most dischargees were, when the Court decided *Giles,* unaware of the opportunity for an upgrade and the military had made no effort to identify and notify the unlawfully discharged servicemembers. *Id.*

These same inequities are found in this case. The only difference between the servicemember plaintiffs in *Giles* and those in this case is the branch of the military in which they enrolled. In fact, because of the relief granted in *Giles,* the inequities, rather than disappearing, have increased. As a result of *Giles,* more than 6,000 Army dischargees received an automatic upgrade of their less than honorable discharges.[16] Dischargees from the Navy, Marine Corps, and Air Force have not been granted such relief.[17]

Thus, the regulations, and the inequities which flow from both the regulations and the relief granted in *Giles,* gravely undermine the military's position. The military, it should be noted, in no way questions the validity of the regulations. On the contrary, the defendants rely on the regulations' remedial effect for their argument that Walters should exhaust his administrative remedies. The regulations, like any other validly promulgated substantive rules, have the force of law. *See Batterton v. Marshall,* 648 F.2d 694 (D.C.Cir.1980). The Court of Military Appeals' decisions in *Lloyd* and *Armstrong* certainly did not challenge the validity of the regulations. As a result, even a clear rejection of *Ruiz* by the military court would not require this Court to adopt the military's argument.[18]

### D. Class Certification

The plaintiff seeks class certification for all former servicemembers of the Marine Corps, Navy or Air Force who received a less than honorable discharge stemming from an administrative proceeding which

---

**14.** 32 C.F.R. § 41.7(f).

**15.** 32 C.F.R. § 70.6(c)(1)(ii).

**16.** Defendant's Report to the Court, *Giles v. Secretary of the Army,* 627 F.2d 554 (1980).

**17.** Although the military authorities have failed to correct this inequity, they have certainly not been unaware that the concerns prompting the decision in *Giles* underlie this case as well. The Army stated as much in its Court of Appeals brief in *Giles:* "[A]lthough the Navy and Air Force are not parties to this case, their practices were similar to the Army's. Thus, the district court's order [in *Giles*] will ultimately affect several thousand more cases." Brief for Appellant at 45 n.30. Needless to say, the services' position in this case has been to deny and resist such an "ultimate" result.

**18.** The plaintiff also argues that *Armstrong* and *Lloyd* cannot be applied retroactively so as to affect the lawfulness of discharges issued between 1958 and the *Armstrong* decision in 1980. He notes that *Ruiz* was foreshadowed by the Court of Military Appeals' 1957 and 1958 decisions in *Jordan* and *Forslund* and, thus, the legality of basing the character of a discharge on evidence gathered in a compelled urinalysis became doubtful after 1958. *See Giles,* 627 F.2d at 557. While the argument has considerable merit, *see Zweibon v. Mitchell,* 606 F.2d 1172 (D.C.Cir.1979), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981), the Court need not, in light of the reasoning set forth above, rule on the question.

relied upon evidence from a compelled urinalysis test administered for the purposes of identifying drug abusers. Two of the four requirements of Rule 23(a), Federal Rules of Civil Procedure, numerosity[19] and adequate representation,[20] are clearly satisfied.

The primary argument against certification rests on the commonality/typicality requirement of the Rule. In *Giles*, this Court ruled that class members were entitled to an automatic upgrade of their discharge certificates even if the character of the discharge was based only in part on the evidence discovered during a compelled urinalysis. However, the Court of Appeals modified the order by allowing the Army to initiate new administrative proceedings for any class member who, in his original discharge proceeding, was charged with some other form of misconduct which could have independently supported a less than honorable discharge. 627 F.2d at 558. The reviewing court stated that "the Army may elect to initiate new proceedings for any class member whose service was characterized as less than honorable for reasons unrelated to compelled urinalysis but whose records at the initial discharge proceeding contained evidence of such urinalysis." *Id.* Relying on this modification, the defendants argue that, at a minimum, a class cannot include those dischargees whose records indicate non-drug related misconduct.

No such result is compelled by the Court of Appeals' decision. Rather than requiring exclusion of these dischargees from the proposed class, the decision merely required that different groups within the class receive different remedies. This Court's determination as to the appropriateness of class certification was not reversed.

The defendants' second argument against class certification is that the discharge procedures differed among the three services. The Navy and Marine Corps, they argue, determined the character of a servicemember's discharge certificate in an objective fashion by use of a point scale,[21] while the Air Force, like the Army, based the character of the discharge primarily on the subjective recommendation of the servicemember's commanding officer.

This Court fails to see the significance of the different discharge procedures. The Navy and Marine Corps' objective approach merely enables those services to more easily determine whether, if evidence resulting from the compelled urinalysis were excluded from the discharge proceeding, a servicemember's poor rating would nonetheless have warranted issuance of a less than honorable discharge. The distinction in discharge procedures does not alter the common attribute of all class members—namely, that all of them received a less than honorable discharge stemming either in part or in whole from a compelled urinalysis.

Certification of the class, with Walters as the name plaintiff, is therefore appropriate. *See Wood v. Secretary of Defense*, 496 F.Supp. at 198.

---

**19.** The plaintiff's complaint asserts that there are "over 1,000" former servicemembers who are members of the class. In their memoranda filed with the Court, however, the plaintiff suggests a figure of 10,000 to 12,000. Either number suffices for the purposes of Rule 23(a).

**20.** The plaintiff's attorneys also represented the plaintiff in *Giles*.

**21.** Navy and Marine Corps personnel were periodically rated on their performance and behavior. An honorable discharge was provided those servicemembers whose average performance rating was 2.7 or greater and whose average behavior rating was 3.0 or greater. Receipt of a medal or award could qualify a servicemember who would otherwise receive a general discharge.