Robert A. WALTERS, et al.

v.

**SECRETARY OF DEFENSE, et al., Appellants.**

No. 82–2089.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 23, 1983.

Decided Dec. 30, 1983.

John D. Bates, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), Royce C. Lamberth, R. Craig Lawrence and John Oliver Birch, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellants.

Barton F. Stichman, Washington, D.C., with whom David F. Addlestone, Washington, D.C., was on the brief, for appellees.

Joseph M. Hassett, John C. Keeney, Jr., Sue A. Kaplan, and Katherine A. Schoff, Washington, D.C., were on the brief, for amicus curiae urging affirmance.

Before TAMM and WILKEY, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Within seven weeks after Robert Walters was inducted into the Marine Corps in 1973, he was given a general discharge from service, following an administrative hearing in which evidence of drug abuse was introduced through a compelled urinalysis examination. On August 22, 1981, not having availed himself of administrative remedies, Walters sued in the District Court, for declaratory and injunctive relief to upgrade his discharge to honorable, and sought to represent the class of all others similarly situated in the Navy, Marine Corps, and Air Force. The District Court granted plaintiff Walters' motion for summary judgment and ordered the class relief requested by plaintiff. *Walters v. Secretary of Defense,* 533 F.Supp. 1068 (D.D.C.1982).

The Secretary appeals and urges three grounds for reversal: 1) that the six-year statute of limitations in 28 U.S.C. § 2401(a) (1976 & Supp. V 1981) barred this action; 2) that plaintiff did not exhaust his administrative remedies; and 3) that under recent changes in underlying military law, plaintiff's discharge based on a compulsory urine specimen was lawful. Because of the presence of a common issue of the statute of limitations, this case was argued contemporaneously with *Calhoun v. Lehman,* 725 F.2d 115 (D.C.1983).

We reverse the District Court's decision on the ground that the six-year statute of limitations of section 2401(a) bars this civil action for declaratory and injunctive relief

brought seven and one-half years after the former servicemember's discharge.

## I. GENERAL LEGAL BACKGROUND

In the early 1970's the armed forces operated a program of compulsory urine sampling that attempted to identify military drug abusers. Under procedures prevalent at that time, evidence secured from compulsory urine samples could be introduced at administrative proceedings leading to less-than-honorable discharges. *See Giles v. Secretary of the Army,* 475 F.Supp. 595, 597–98 (D.D.C.1979), *aff'd as modified,* 627 F.2d 554 (D.C.1980). On one occasion, this Court approved the constitutionality of an extensive program of compulsory urinalysis within the military. *Committee for GI Rights v. Callaway,* 518 F.2d 466 (D.C.Cir. 1975).[1]

In *United States v. Ruiz,* 23 C.M.A. 181, 48 C.M.R. 797 (1974), the Court of Military Appeals had previously held that an order compelling delivery of a urine specimen violated Article 31 of the Uniform Code of Military Justice (UCMJ),[2] and was unlawful even when intended to be used in an *administrative* proceeding. That case applied to administrative proceedings prior decisions dealing with courts martial. *United States v. Jordan,* 7 C.M.A. 242, 22 C.M.R. 242 (1957), reversed a court-martial conviction for refusal to obey an unlawful order to furnish a urine specimen; and *United States v. Forslund,* 10 C.M.A. 8, 27 C.M.R. 82 (1958), reversed a court-martial convic-

---

1. Under decisions of the Supreme Court, the Fifth Amendment's privilege against self-incrimination does not make inadmissable evidence obtained from compulsory specimens of body fluids. *See South Dakota v. Neville,* —— U.S. ——, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983); *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

2. Article 31 of the Uniform Code of Military Justice, 10 U.S.C. § 831 (1976) provides:

(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an of-

fense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

tion that rested on evidence inadmissable because it was derived from an unlawful order to provide a urine specimen. *Ruiz* itself set aside a conviction for refusal to obey such an order. 23 C.M.A. at 183, 48 C.M.R. at 799.

After *Ruiz,* the services adopted regulations providing that administrative discharges based solely on compelled urine samples would be classified "honorable." Enlisted Administrative Separations, 32 C.F.R. § 41.7(f) (1982). The new rules were also extended to former servicemembers who might apply to military discharge review boards (DRB's) for upgrading of their discharges. 32 C.F.R. § 70.6(c)(i), (ii) (1982).

In *Giles, supra,* the recipient of an administrative general discharge from the Army based on a compulsory urine sample, sought an upgrading to an honorable discharge from the district court. Relying primarily upon *Ruiz,* and without independently considering that decision, Judge Parker ordered that Giles' discharge be upgraded, certified a class consisting of all persons ˉdischarged from the Army under similar circumstances, and ordered the upgrading of all such discharges. *Giles, supra,* at 475 F.Supp. 595. This Court affirmed with one limited modification. *Giles v. Secretary of the Army,* 627 F.2d 554, 557–59 (D.C.Cir. 1980).

Under the *Jordan-Forslund-Ruiz* line of cases, Article 31 had been construed as extending the scope of protection from self-incrimination *beyond* the Fifth Amendment. In *United States v. Armstrong,* 9 M.J. 374 (C.M.A.1980), the Court of Military Appeals sharply reduced that anomaly in a case in-

volving the taking of blood specimens. Writing for himself only, Chief Judge Everett concluded that Article 31 "was not intended to go beyond the scope of the Fifth Amendment [and] has no relevancy to blood specimens . . . ." 9 M.J. at 380. The concurrence of the Court's other two members did not sweep so broadly as to the identity between Article 31 and the Fifth Amendment, but did "agree . . . that '[n]o persuasive reason exists for Article 31 to be extended to bodily fluids' . . . ." 9 M.J. at 384. *United States v. Lloyd,* 10 M.J. 172 (C.M.A.1981), involved the compelled production of documents including handwriting specimens, and reinforced the approach of *Armstrong* in equating Article 31 with the Fifth Amendment and its limitations. 10 M.J. at 175. Thus, although *Armstrong* involved blood rather than urine samples, and did not expressly overrule *Ruiz,* its impact on *Ruiz* was devastating.

In 1983, since the decision of the District Court in this case, yet another decision of the Court of Military Appeals, *Murray v. Haldeman,* 16 M.J. 74, 81 (C.M.A.1983), has ruled that "[u]rine specimens fall within the [*Armstrong*] rationale." As a matter of Article 31 law, then, the introduction of compulsory urinalysis evidence into administrative discharge proceedings is now lawful.[3] The military services, however, seem not to have amended their post-*Ruiz* regulations to reflect the new case law of *Armstrong* and *Murray.* The trial court record is silent on this point. Counsel for appellants indicated at oral argument that, although changes were under way, none of the services had accomplished a final amendment of relevant regulations.[4]

**3.** In their Supplemental Brief, appellees argue that *Murray* was wrongly decided, and that Article 31 protects servicemembers from the use of compulsory urine specimen evidence. *See* Supp. Brief at 4, n. 4. Without quite saying as much, appellees invite this Court to overrule the Court of Military Appeals. This case provides no occasion for this Court to reconsider *Murray.* We note that regarding military law, the decisions of the Court of Military Appeals are almost always to be accorded "great deferrence" by Article III courts. *See Middendorf v. Henry,* 425 U.S. 25, 43, 96 S.Ct. 1281, 1291, 47 L.Ed.2d 556 (1976). Further-

more, *Armstrong,* upon which *Murray* relies, appears well supported in its conclusion that in enacting Article 31, Congress did not intend to extend protections against self-incrimination any further than the scope of the Fifth Amendment. *See Armstrong,* 9 M.J. at 380–83 (citations omitted).

**4.** The Secretary has, in this case, urged that this Court rely upon *Armstrong* and *Murray.* If the services intend to rely on those new decisions of the Court of Military Appeals, then they should at least amend their own regulations expeditiously to reflect the relevant

## II. Procedural Background

Against this shifting background, plaintiff Walters seeks relief similar to that granted in *Giles,* but on behalf of a class of Navy, Marine Corps, and Air Force veterans. On November 8, 1973, seven weeks after Walters enlisted, he was given his administrative general discharge, based on drug abuse revealed by a compulsory urine specimen. More than six years later,[5] Walters filed a review application with the Navy Board of Review for discharges and dismissals[6] seeking an upgrade. Walters' counsel, the National Veterans Law Center, later withdrew his application due to their scheduling difficulties concerning their representation of Walters. No new administrative application was ever filed by Walters.

Walters filed this suit in the District Court on August 22, 1981. Cross-motions for summary judgment followed. Judge Parker granted summary judgment in favor of plaintiff and his class,[7] and prescribed that the services determine which servicemembers were discharged in reliance upon compelled urine specimens, and then either grant an automatic upgrade to each, or offer a new discharge hearing in those cases where independent grounds existed. *Walters v. Secretary of Defense,* 533 F.Supp. 1068 (D.D.C.1982).

The District Court rejected each of the Secretary's proffered grounds for summary judgment, the three issues raised upon appeal. Judge Parker gave two reasons for rejecting the Secretary's contention that 28 U.S.C. § 2401(a), *infra,* constituted a time bar to the action: (1) such an action falls outside the scope of the statute; and (2) alternatively, that because Walters had fifteen years to bring an administrative challenge to his discharge under the UCMJ, 10 U.S.C. § 1553(a),[8] his cause of action had not yet accrued. *Id.* at 1070–71. In rejecting the Secretary's exhaustion argument, the District Court invoked its discretion to create an exception to the exhaustion requirement: because "all parties agree that Walters would have received an upgraded discharge had he not withdrawn his petition for review" no purpose would be served by an exhaustion requirement, imposition of which would only delay ultimate relief. *Id.* at 1072. Finally, regarding the question of the underlying illegality of the order given Walters, the District Court found that subsequent decisions in *United States v. Armstrong, supra,* and *United States v. Lloyd, supra,* had not overruled *Ruiz,* one basis for *Giles;* and in any event, that *Giles* had also rested on certain inequities similar to those perceived in the instant case.

Since the taking of this appeal, Richard A. Cusimano, claiming to be a member of the plaintiff class, filed a Motion to Intervene both in the District Court and in this Court. Cusimano claims to have exhausted adequately his administrative remedies; his intervention was designed to cure the potential exhaustion problems posed above. The Motion to Intervene was granted by the District Court on March 9, 1983, and the Clerk of this Court has accordingly granted

---

changes in case law interpreting Article 31. Failure to do so unnecessarily confuses the question of how *Giles, supra,* ought to be read under present circumstances.

**5.** Walters' application was dated November 26, 1979, but not mailed until March 19, 1980.

**6.** 10 U.S.C. § 1553(a) (1976) provides:

The Secretary concerned shall, after consulting the Administrator of Veterans' Affairs, establish a board of review, consisting of five members, to review the discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial) of any former member of an armed force under the jurisdiction of his department upon its own

motion or upon the request of the former member or, if he is dead, his surviving spouse, next of kin, or legal representative. A motion or request for review must be made within 15 years after the date of the discharge or dismissal.

**7.** The class certified by the District Court consisted of "all former servicemembers of the Marine Corps, Navy or Air Force who received a less than honorable discharge stemming from an administrative proceeding which relied upon evidence from a compelled urinalysis test administered for the purposes of identifying drug abusers." 533 F.Supp. at 1074–75.

**8.** *See* n. 6, *supra.*

Mr. Cusimano the formal designation of co-appellee. *See Walters v. Secretary of Defense,* Civ. A. No. 81–00962 (D.D.C. Mar. 9, 1983) (order granting motion to intervene for purpose of appeal); *Walters v. Secretary of Defense,* No. 82–2089 (D.C.Cir. Mar. 22 & 31, 1983).

### III. THE SCOPE OF THE STATUTE OF LIMITATIONS

■ The District Court found that Walters was discharged in November, 1973. The plaintiff did not bring this suit until April 22, 1981—nearly seven and one-half years later. We hold that the six-year statute of limitations established by 28 U.S.C. § 2401(a) barred Walters' suit in the District Court.

The precise language of the statute provides:

> [E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues. The action of any person under legal disability or beyond the seas at the time the claim accrues may be commenced within three years after the disability ceases.

28 U.S.C. § 2401(a) (1976 & Supp. V 1981). Walters' suit was undoubtedly a "civil action," and was indisputably brought later than six years after his discharge. Notwithstanding these facts, the District Court held Walters' suit not to be barred, by virtue of an implicit exception to the statute for an injunctive suit seeking to correct the improper administrative discharge of a servicemember. 533 F.Supp. at 1070. We decide that no such exception exists.

Our starting point is Judge Robinson's opinion in *Saffron v. Department of the Navy,* 561 F.2d 938 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978). That case presented the question whether the improper dismissal claim of a civilian Navy employee was within the scope of the section 2401(a) bar. The Court began with an unassailable observation:

where Congress has prescribed a limitation period, its mandate must be obeyed. *Id.* at 941 & n. 17 (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946)). The Court went on to find that regarding "[s]uits against the United States," section 2401(a) was such a mandate, and commanded dismissal of claims for both legal and equitable relief. 561 F.2d at 941–42.[9]

The *Saffron* Court held the plaintiff's equitable claims for reinstatement, as well as his monetary damages claims, to be barred by the statute. *Id.* at 942, 946. Significantly, the Court felt compelled to apply the section 2401(a) time bar even though both parties had analyzed the timeliness of the equitable claims under the doctrine of laches. *Id.* at 942. The concurrency of law and equity in the federal courts dictated that where "remediation does not lie exclusively within the domain of equity, the availability of legal relief to enforce the underlying right summons the statute of limitations into play as to the whole." *Id.* at 944. On this point of the unity of law and equity, the concurrence of Judge McGowan was particularly emphatic: he pointed to Congress' 1948 substitution of the language "[e]very civil action" for the earlier word "suits" as eliminating any possible distinction under the statute between legal and equitable claims. 561 F.2d at 946 (McGowan, J., concurring separately). As Judge McGowan noted in his opinion, *id.* at 946 n. 60, both the Fifth and Ninth Circuits have held that section 2401(a) bars untimely suits seeking purely equitable relief. *Screven v. United States,* 207 F.2d 740, 741 (5th Cir.1953); *Werner v. United States,* 188 F.2d 266, 268 (9th Cir.1951).

Judge Robinson's analysis of the limitation statute in *Saffron* offered one final and potent reason for the result in that case: the statutory congruency of the jurisdiction of the Court of Claims and the District Courts. Because the Court of Claims, under 28 U.S.C. § 1491, could have no juris-

---

9. The Court noted that the section 2401(a) statute of limitations "is but an exertion of the undoubted congressional power to impose restrictions upon the institution of litigation authorized against the Federal Government." 561 F.2d at 941 n. 24.

diction over equitable claims where companion money claims were time-barred,[10] allowing the District Court to entertain equitable claims would destroy Congress' policy of "symmetry between the two courts . . . ." 561 F.2d at 945–46.

Recent decisions of this Court have reconfirmed the principle of *Saffron* that section 2401(a) bars all untimely claims, whether equitable or legal. In *Oppenheim v. Campbell,* 571 F.2d 660 (D.C.Cir.1978), this Court accepted the government's argument, raised for the first time upon appeal, that the statute barred the equitable claims of a civil servant seeking additional retirement credit. Similarly, in *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 & n. 6 (D.C.Cir.1982), a contract action, the Court indicated that injunctive as well as monetary relief lay within the section 2401(a) time bar. Finally, *White v. United States Civil Service Commission,* 589 F.2d 713, 715 (D.C.Cir.1978), *cert. denied sub nom. White v. Office of Personnel Management,* 444 U.S. 830, 100 S.Ct. 58, 62 L.Ed.2d 39 (1979), indicated that section 2401(a) applied to equitable relief sought from agency officials under the Administrative Procedure Act. *See also Impro Products, Inc. v. Block,* 722 F.2d 845 at 849 n. 6 (D.C.Cir.1983) (same).

■ Contrary to the express language of the statute and to case law in this Circuit, the District Court in this case purported to recognize an implicit exception to the section 2401(a) six-year limitation. Judge Parker stated simply that "[c]ourts have frequently entertained challenges to court martials long after the six-year period has expired," and that he could find no reason to treat administrative discharges differently. 533 F.Supp. at 1070. The District Court relied here, however, on *Homcy v. Resor,* 455 F.2d 1345 (D.C.Cir.1971), and *Ashe v. McNamara,* 355 F.2d 277 (1st Cir. 1965)—two cases in which no statute of limitations issue was presented on appeal.[11] Appellate cases which do not even address potential limitations issues can hardly support the creation of a blanket exception from section 2401(a) for an entire class of cases.[12]

The District Court also relied upon the district court's decision in the companion case, *Calhoun v. Lehman,* Civ.A. No. 78–00988, slip op. at 6–7 (D.D.C. Jan. 27, 1982) (interim order on remand), that section 2401(a) did not apply to that action to correct alleged infirmities in a court martial discharge. That ruling in *Calhoun* is obviously the direct product of *Kaiser v. Secretary of the Navy,* 525 F.Supp. 1226, 1228 (D.Colo.1981) (dicta), and *Wood v. Secretary of Defense,* 496 F.Supp. 192, 198 (D.D.C. 1980) (Parker, J.). That entire string of

---

**10.** In 1972, Congress modified the jurisdiction of the Court of Claims to allow that court to provide equitable relief, but only when jurisdiction was properly founded on a money claim:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

Pub.L. No. 92–415, § 1, 86 Stat. 652, amending 28 U.S.C. § 1491 (1972). Thus where money damages are barred, the Court of Claims has no power to award equitable relief. *See Calhoun v. United States,* No. 466–77, slip op. at 2 (Ct.Cl. Mar. 17, 1978).

**11.** In *Homcy,* moreover, the underlying claim of "improper command influence" was based on new evidence discovered long after the court martial. *See* 455 F.2d at 1348. Hence any applicable limitation period would likely have been tolled.

**12.** In any suit against the United States, the statute of limitations is an integral part of the government's consent to suit, and as such is an issue of subject matter jurisdiction that cannot be waived. *See Finn v. United States,* 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887); *Wolak v. United States,* 366 F.Supp. 1106, 1110 (D.Conn. 1973); *Crown Coat Front Co. v. United States,* 275 F.Supp. 10, 15 (S.D.N.Y.1967), *aff'd,* 395 F.2d 160 (2d Cir.), *cert. denied,* 393 U.S. 853, 89 S.Ct. 123, 21 L.Ed.2d 122 (1968). Nonetheless, the observation that courts have not, in particular cases, addressed the issue of a possible time bar does not lead to the conclusion that no such problem existed, and certainly does not control the case at bar.

cases appears to be ultimately attributable to a later-vacated opinion of this Court, *Baxter v. Claytor,* No. 77–1984, slip op. (D.C.Cir.1978), *vacated on other grounds,* 652 F.2d 181 (1981). Thus, it is to that vacated *Baxter* opinion (*Baxter I*) that we must direct our attention.

*Baxter I* recognized an implicit exception from section 2401(a) for a "corrective action" seeking collateral relief from court martial convictions on the basis of alleged constitutional infirmities. The Court correctly noted that certain actions—most notably habeas corpus—have always been regarded as outside the scope of the statute of limitations. *Baxter I* at 18. The Court then concluded, in essence, that a "corrective action," seeking only prospective equitable relief, was more closely akin to habeas corpus than to a damages suit, and lay outside the scope of section 2401(a). *Id.* at 19–21. The Court reasoned that the interests of the government against delay in the bringing of such suits were not comparable to the interests against delay of damages actions. *Id.* at 20.

A later panel of this Court vacated *Baxter I* on a ground separate from the statute of limitations issue, relating to the availability of administrative review. *See Baxter v. Claytor,* 652 F.2d 181 (D.C.Cir.1981). That vacating decision, however, called that portion of the first decision here relevant into some doubt, by indicating that "either laches or the statute of limitations could affect" an untimely action brought in the future. 652 F.2d at 186 n. 4.

In deciding today that section 2401(a) bars the equitable claims of Walters, we reject the reasoning of *Baxter I* and of the District Court in this case as inconsistent with the law of this circuit as previously established by Judge Robinson's opinion in *Saffron, supra.* Drawing an analogy between habeas corpus and corrective actions in this context would fail to give adequate consideration both to the unique constitutional status of the Great Writ,[13] and to the weighty policies behind the statutory scheme established by Congress in section

2401(a) and related provisions. We thus adhere to the analysis set forth in *Saffron* that treats legal and equitable claims identically under section 2401(a). Even though the relief sought in this case is purely prospective, and does not involve reinstatement, the plaintiffs seek a remedy that significantly compels very extensive government action and in addition may eventually result in substantial demands on the federal fisc. Such claims for relief must be viewed as within the scope of the statute.

We also reject an alternative ground, offered by *amici* the National Association of Concerned Veterans, *et al.,* for recognizing an implicit exception from the comprehensive language of section 2401(a) for claims of the type here presented. *Amici* urge that section 2401(a) traces its ancestry to the Tucker Act, 24 Stat. 505 (1887), which was concerned only with money claims against the United States, and that no subsequent change in the statutory predecessor to section 2401(a) evinced any intent to extend its scope to equitable claims. While the historical analysis of *amici* is not entirely unsound, neither is it complete. In *Werner v. United States, supra,* the Ninth Circuit found that although one purpose of section 2401(a) was to consolidate parts of the Tucker Act, Congress' adoption of the language "every civil action" had gone further: it had "created a general statute of limitations insofar as suits against the United States are concerned." 188 F.2d at 268. *Amici's* statutory interpretation is simply at variance with the careful analysis in *Saffron, supra*—neither Judge Robinson nor Judge McGowan in concurrence perceived such a limitation in section 2401(a)— and finds no support in interpretative case law. Other federal courts have applied section 2401(a) to actions outside the traditional confines of the Tucker Act. *See Heritage Pullman Bank and Trust Co. v. United States,* 480 F.Supp. 54, 57 (N.D.Ill.1979) (action under Administrative Procedure Act); *Ippolito-Lutz, Inc. v. Harris,* 473 F.Supp. 255 (S.D.N.Y.1979) (action under 28 U.S.C.

---

**13.** *See* U.S. Const. Art. 1, § 9, cl. 2 (suspension    clause).

§§ 1331(a) and 1361); *James v. Ambrose,* 367 F.Supp. 1321, 1321 (D.St.Croix 1973) (action under 28 U.S.C. § 1361).

We note, finally, that Congress' closing of the door to the federal courthouse after six years has *not* left servicemembers in Walters' situation entirely without a remedy. Congress has required, and the services have established, both record correction boards and discharge review boards under 10 U.S.C. §§ 1552 and 1553. Those boards may hear claims subject respectively to the flexible limitation period of section 1552(b) [14] and the generous fifteen year period of section 1553(a), *supra* n. 6. Apparently Walters simply chose to ignore these available remedial routes.

## IV. ACCRUAL OF THE CAUSE OF ACTION

■ As an alternative to its decision that Walters' action lay outside the scope of section 2401(a), the District Court held that "the cause of action does not accrue until the appropriate discharge review board denies the servicemember's request for an upgrade," and thus that Walters' "cause of action has not yet accrued and the statutory time under section 2401(a) has not yet begun to run." 533 F.Supp. at 1071. The only authority offered on behalf of that proposition was the District Court's earlier decision in *Wood v. Secretary of Defense,* 496 F.Supp. 192, 197–98 (D.D.C.1980). Again, however, the decision in *Wood* seems founded on our later-vacated decision in *Baxter I. See* 496 F.Supp. at 197 & n. 15, 198 & n. 16.

As a matter of legal interpretation, the District Court's ruling on this issue is highly problematic. The District Court did not even attempt to come to grips with the implications of its decision—for instance, in the context of the case at hand, that the Court went on to adjudicate a claim that had in its own words, "not yet accrued." 533 F.Supp. at 1071. In the broader context, the problems are even greater. The District Court's view of when the cause of action would accrue would virtually repeal the statute of limitations in a case such as Walters', where the plaintiff has not exhausted his administrative remedies. Once section 2401(a) is properly understood to apply to an action of this nature, such a result is untenable.

In practical terms, it seems eminently sensible to conclude that Walters' cause of action first accrued at that time when he began to suffer an alleged disadvantage—when he received his less-than-honorable discharge in 1973. Court of Claims decisions support that conclusion. *See Bruno v. United States,* 556 F.2d 1104, 1105–06, 214 Ct.Cl. 383 (1977); *Kirby v. United States,* 201 Ct.Cl. 527, 531 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Mathis v. United States,* 391 F.2d 938, 939, 183 Ct.Cl. 145 (1968), *aff'd on rehearing,* 421 F.2d 703, 190 Ct.Cl. 925 (1970); *Merriott v. United States,* 163 Ct.Cl. 261, 263–64 (1963), *cert. denied,* 379 U.S. 838, 85 S.Ct. 76, 13 L.Ed.2d 45 (1964). Those cases were decided under 28 U.S.C. § 2501, the statute of limitations for the Court of Claims, and concerned whether the pursuit of administrative remedies then deemed "permissive" tolled or deferred the running of the statute of limitations. In this context, though, there is certainly no distinction between the companion statutes of limitations found at section 2401(a) and section 2501. In addition, the strong weight of authority is that the section 2401(a) limitations period begins to run when the servicemember's administrative discharge is final. *See Boruski v. United States Government,* 493 F.2d 301, 305 n. 5 (2nd Cir.1974), *appeal dismissed,* 419 U.S. 808, 95 S.Ct. 20, 42 L.Ed.2d 34, *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975); *James v. Ambrose,* 367 F.Supp. 1321, 1327 (D.St.Croix 1973); *Mathis v. Laird,* 324 F.Supp. 885, 887 (M.D.Fla.1971), *aff'd,* 457 F.2d 926 (5th Cir.1972), *cert. denied,* 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972).

---

**14.** The Board is free to waive the general three-year limit "if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b) (1976). *See Bax-* *ter v. Claytor,* 652 F.2d 181, 184–85 (D.C.Cir. 1981).

We are presented, of course, with a somewhat unusual case, in that Walters has made no serious effort to exhaust his administrative remedies.[15] We need not and do not decide whether, had a named plaintiff sought and received a final decision from a discharge review board, the statute of limitations could have been tolled in any way. Nor do we address the reviewability of such an administrative decision in federal court.[16] We hold only that when no intervening action has *actually* been taken by plaintiff, the mere *availability* of administrative relief does not affect the operation of the section 2401(a) statute of limitations.[17]

Finally, as an alternative to the grounds relied upon by the District Court for holding this action not barred by section 2401(a), Walters urges that his cause of action "should be considered to have accrued at the time of this Court's decision in *Giles* in 1980 ...." Appellee's Brief at 57 n. 60. In light of controlling military law in the years before *Giles*,[18] that case was not so momentous as to require tolling of the statute of limitations in this case. We therefore reject appellee's alternative ground for affirmance.

The court expresses no opinion as to the merits of the claims of Walters and his class, or as to the other issues sought to be presented by this appeal.

## V. CONCLUSION

The decision of the District Court is reversed due to the bar of the statute of limitations, 28 U.S.C. § 2401(a), and the case is remanded for further proceedings not inconsistent with this opinion.

*Judgment Accordingly.*

---

**15.** A case such as this clearly lies outside the "continuing injury" doctrine regarding the accrual of a cause of action. Unlike the plaintiff in a case such as *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 994 & n. 30 (D.C. Cir.1973), Walters suffers in large part from a self-inflicted wound (if his claim has merit)—his own failure to pursue administrative remedies.

**16.** Thus our decision need not address the "anomaly" Judge Parker perceived between the six-year statute of limitations and the fifteen-

year administrative review limitation period. *See* 533 F.Supp. at 1071 & n. 6.

**17.** In the companion case, *Calhoun v. Lehman,* 725 F.2d 115—an appeal of *Calhoun v. Lehman,* 556 F.Supp. 67 (D.D.C.1982)—we hold that section 2401(a) applies to an action brought over 30 years after release and 12 years after the last administrative review taken.

**18.** *See* discussion of legal background, *supra* at 108.